No. _____

=================================================================

## *In the Supreme Court of the United States*

TATE REEVES, IN HIS OFFICIAL CAPACITY AS GOVERNOR OF MISSISSIPPI; PHILIP GUNN, IN HIS OFFICIAL CAPACITY AS SPEAKER OF THE MISSISSIPPI HOUSE OF REPRESENTATIVES; DELBERT HOSEMANN, IN HIS OFFICIAL CAPACITY AS LIEUTENANT GOVERNOR OF MISSISSIPPI; MICHAEL WATSON, IN HIS OFFICIAL CAPACITY AS SECRETARY OF STATE OF MISSISSIPPI; CAREY M. WRIGHT, IN HER OFFICIAL CAPACITY AS STATE SUPERINTENDENT OF EDUCATION AND EXECUTIVE SECRETARY OF MS STATE BOARD OF EDUCATION; ROSEMARY AULTMAN, IN HER OFFICIAL CAPACITY AS MEMBER OF THE MISSISSIPPI STATE BOARD OF EDUCATION; JASON DEAN, IN HIS OFFICIAL CAPACITY AS CHAIR OF THE MISSISSIPPI STATE BOARD OF EDUCATION; KAREN ELAM, IN HER OFFICIAL CAPACITY AS MEMBER OF THE MISSISSIPPI STATE BOARD OF EDUCATION; ANGELA BASS, IN HER OFFICIAL CAPACITY AS MEMBER OF THE MISSISSIPPI STATE BOARD OF EDUCATION; RONNIE MCGEHEE, IN HIS OFFICIAL CAPACITY AS A MEMBER OF THE MISSISSIPPI STATE BOARD OF EDUCATION; GLEN EAST, IN HIS OFFICIAL CAPACITY AS A MEMBER OF THE MISSISSIPPI STATE BOARD OF EDUCATION,

*Applicants,*

v.

INDIGO WILLIAMS, ON BEHALF OF HER MINOR CHILD J.E.; DOROTHY HAYMER, ON BEHALF OF HER MINOR CHILD, D.S.; PRECIOUS HUGHES, ON BEHALF OF HER MINOR CHILD, A.H.; SARDE GRAHAM, ON BEHALF OF HER MINOR CHILD, S.T.,

*Respondents.*

---

## APPLICATION TO RECALL AND STAY THE MANDATE OF THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT PENDING THE FILING AND DISPOSITION OF A PETITION FOR A WRIT OF CERTIORARI

LYNN FITCH
Attorney General of Mississippi

STATE OF MISSISSIPPI
OFFICE OF THE ATTORNEY GENERAL
P.O. BOX 220
Jackson, Mississippi 39205-002
(601) 359-3680
krissy.nobile@ago.ms.gov

KRISSY C. NOBILE
Deputy Solicitor General
*Counsel of Record*

JUSTIN L. MATHENY
Assistant Solicitor General

CANDICE L. RUCKER
DREW D. GUYTON
Special Assistant Attorneys General

# TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................ii

TABLE OF AUTHORITIES..........................................................iii

DECISION UNDER REVIEW..........................................................7

JURISDICTION.................................................................................7

STATEMENT OF THE CASE.........................................................8

REASONS FOR GRANTING THE STAY.......................................11

I.  There is a Reasonable Probability that this Court will Grant Certiorari.............12

II. There is at least a Fair Prospect that the Court will Reverse the Decision Below..14

    A. The Eleventh Amendment prohibits declaratory relief instructing state officials that they remain bound by, and must conform their conduct to, 1868 state law....................................................................................15

    B. The Eleventh Amendment bars the federal court from issuing a declaration that current state law violates the school rights and privileges secured by 1868 state law....................................................................................17

    C. Plaintiffs cannot utilize *Ex parte Young* to sidestep the Eleventh Amendment because plaintiffs have no private cause of action and no federal rights for the federal courts to vindicate....................................................................24

III. There is a Likelihood that Irreparable Harm Will Result from the Denial of a Stay......................................................................................31

IV. The Balance of the Equities Heavily Favors the State...................................32

CONCLUSION............................................................................34

**TABLE OF AUTHORITIES**

Page(s)

<u>**Cases**</u>

*Aetna Life Ins. Co. of Hartford, Conn. v. Haworth,*
   300 U.S. 227 (1937)..............................................................................24

*Alden v. Maine,*
   527 U.S. 706 (1999)...............................................................14, 31, 32

*Alexander v. Sandoval,*
   532 U.S. 275 (2001)..............................................................................25

*Armstrong v. Exceptional Child Center, Inc.,*
   575 U.S. 320 (2015)........................................................................25, 28

*Baker v. Carr,*
   369 U.S. 186 (1962)................................................................................1

*Barr v. American Ass'n of Political Consultants, Inc.,*
   140 S. Ct. 2335 (2020)..........................................................................21

*Bio-Medical Applications of North Carolina, Inc. v. Electronic Data Systems Corp.,*
   2006 WL 8438696 (E.D.N.C. Jan. 25, 2006)......................................27

*Bragg v. W. Virginia Coal Ass'n,*
   248 F.3d 275 (4th Cir. 2001).................................................................22

*Butler v. Thompson,*
   97 F. Supp. 17 (E.D. Va. 1951).........................................................6, 12

*Cal. v. Am. Stores Co.,*
   492 U.S. 1301 (1989).............................................................................13

*Chapman v. Houston Welfare Rights Org.,*
   441 U.S. 600 (1979)...............................................................................29

*College Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.,*
   527 U.S. 666 (1999)...........................................................................6, 31

*Collins v. Mnuchin,*
   938 F.3d 553 (5th Cir. 2019).................................................................21

iii

*Ex parte Young,*
  209 U.S. 123 (1908)...................................................................................passim

*Federal Maritime Comm'n v. South Carolina Ports Authority,*
  535 U.S. 743 (2002)...........................................................................................31

*Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.,*
  561 U.S. 477 (2010)...........................................................................................14

*Golden State Transit Corp. v. Los Angeles,*
  493 U.S. 103 (1989)...........................................................................................25

*Gonzaga Univ. v. Doe,*
  536 U.S. 273 (2002)......................................................................27, 28, 29, 30

*Green v. Mansour,*
  474 U.S. 64 (1985).............................................................................................20

*Hafer v. Melo,*
  502 U.S. 21 (1991).............................................................................................24

*Hans v. Louisiana,*
  134 U.S. 1 (1890)...............................................................................................31

*Hollingsworth v. Perry,*
  558 U.S. 183 (2010)..............................................................................11, 12, 13

*Houchins v. KQED, Inc.,*
  429 U.S. 1341 (1977).........................................................................................33

*Idaho v. Couer d'Alene Tribe,*
  521 U.S. 261 (1997)...........................................................................................18

*Maine v. Thiboutot,*
  448 U.S. 1 (1980)...............................................................................................23

*McCarthy ex rel. Travis v. Hawkins,*
  381 F.3d 407 (5th Cir. 2004).............................................................................26

*Mechenbier v. Lucero,*
  2005 WL 8164259 (D.N.M. Feb. 11, 2005).....................................................27

*Medtronic, Inc. v. Mirowski Fam. Ventures, LLC,*
  571 U.S. 191 (2014)...........................................................................................25

*Merritt v. Jones,*
   259 Ark. 380, 533 S.W.2d 497 (1976)...............................................................6

*Michigan Corrections Organization v. Michigan Dept. of Corrections,*
   774 F.3d 895 (6th Cir. 2014).................................................5, 13, 25, 26, 27

*Morris v. Vandiver,*
   145 So. 228 (Miss. 1933)......................................................................................3

*Papasan v. Allain,*
   478 U.S. 265 (1986)...............................................................................16, 17, 18

*Pennhurst State Sch. & Hosp. v. Halderman,*
   465 U.S. 89 (1984)....................................................................................passim

*Pennsylvania Federation of Sportsmen's Clubs, Inc. v. Hess,*
   297 F.3d 310 (3d Cir. 2002)............................................................................23

*Puerto Rico Aqueduct & Sewer Auth. v. Metcalf and Eddy Inc.,*
   506 U.S. 139 (1993).....................................................................................6, 32

*Rostker v. Goldberg,*
   448 U.S. 1306 (1980)...............................................................................11, 12

*San Antonio Indep. Sch. Dist. v. Rodriguez,*
   411 U.S. 1 (1973).............................................................................23, 24, 34

*Seminole Tribe of Florida v. Florida,*
   517 U.S. 44 (1996)..............................................................................................31

*Singleton v. Wulff,*
   428 U.S. 106 (1976).............................................................................................7

*Skelly Oil Co. v. Phillips Petroleum Co.,*
   339 U.S. 667 (1950)....................................................................................24, 25

*Texas v. White,*
   74 U.S. 700, 7 Wall. 700 (1868).......................................................................9

*Town of Portsmouth v. Lewis,*
   813 F.3d 54 (1st Cir. 2016).............................................................................27

*Verizon Maryland, Inc. v. Public Service Comm'n of Maryland,*
   535 U.S. 635 (2002)..........................................................................................22

*Virginia Office for Protection and Advocacy v. Stewart,*
   563 U.S. 247 (2011)................................................................................5, 18, 26

*Virginian Ry. Co. v. Sys. Fed'n No. 40,*
   300 U.S. 515 (1937)..............................................................................33

*Williams on behalf of J.E. v. Reeves,*
   954 F.3d 729 (5th Cir. 2020)...............................................................passim

*Williams on behalf of J.E. v. Reeves,*
   981 F.3d 437 (5th Cir. 2020)...............................................................passim

## **Federal Constitutional Provisions**

U. S. CONST. amend. XI...............................................................passim

## **Federal Statutes and Rules**

Act of February 23, 1870, ch. XIX, 16 Stat. 67 (Mississippi)...........................passim

Act of January 26, 1870, ch. X, 16 Stat. 62 (Virginia).........................................2,3

Act of March 30, 1870, ch. XXXIX, 16 Stat. 80 (Texas)....................................2,3

Act of March 5, 1878, ch. 14, § 35, 1878 Miss. Laws 89, 103................................3

Civil Rights Act of 1871, ch. 22, 17 Stat. 13....................................................29

Federal Rule of Appellate Procedure 27...........................................................11

Fifth Circuit Rule 27.2.................................................................................11

First Reconstruction Act of 1867, ch.153, 14 Stat. 428 (1867)................................9

Supreme Court Rule 10...........................................................................12, 14

28 U.S.C. § 2201......................................................................................24

28 U.S.C. § 1254(1)....................................................................................8

28 U.S.C. § 2101(f)....................................................................................8

28 U.S.C. § 1651(a)....................................................................................8

42 U.S.C. § 1983.................................................................................passim

**State Constitutional Provisions**

Miss. Const. art VIII, § 201...........................................................passim

Miss. Const. of 1868, art. VIII, § 1.................................................passim

Miss. Const. of 1868, art. VIII, § 5.......................................................3,4

Tex. Const. art. VII, § 1..........................................................................34

Tex. Const. art. IX, § I (1869)................................................................34

Tex. Const. art. IX, § IV (1869)..............................................................34

Va. Const. art. VIII, § 1..........................................................................34

Va. Const. art. VIII, § 3 (1870)...............................................................34

**Other Sources**

Howard M. Wasserman, *Precedent, Non-Universal Injunctions, and Judicial Departmentalism: A Model of Constitutional Adjudication,*
23 Lewis & Clark L. Rev. 1077 (2020)..............................................21

Jonathan F. Mitchell, *The Writ-of-Erasure Fallacy,*
104 Va. L. Rev. 933 (2018)..................................................................21

To the Honorable Samuel A. Alito, Jr., Associate Justice of the Supreme Court of the United States and Circuit Justice for the United States Court of Appeals for the Fifth Circuit:

After suppressing open rebellion in the confederate states during the Civil War, the United States Congress took "extraordinary measures to restore governments of a republican form." *Baker v. Carr*, 369 U.S. 186, 225 (1962). Those measures included refusing to seat congressional members from the former confederate states, and then eventually passing a series of congressional acts that reseated representatives to Congress. Known as the "Readmission Acts," the congressional acts provided ten States a voice at the U.S. Capitol after military supervision of the former confederate states had ceased.

Like Mississippi, many States have Readmission Acts—with Virginia and Texas having acts virtually identical to Mississippi. Additionally, Arkansas, North Carolina, South Carolina, Alabama, Louisiana, and Florida have acts—and Georgia has two. While the wording varies, the acts are similarly titled: "An Act to admit the State of _____ to Representation in Congress."

This lawsuit now endeavors to repurpose and privately enforce the 1870 congressional Readmission Acts against the State of Mississippi.[1]

A.      Plaintiffs' attempt to privately enforce the acts that readmitted ten States to Congress is a non-starter for many reasons. For one, the relief sought conflicts with the Eleventh Amendment. For another, the Readmission Acts contain

---

[1] The defendants-applicants are collectively referred to as the "State."

no privately enforceable federal rights. Thus, nearly four years after this lawsuit was filed, one would think this "strange case"[2] would have come to an end.

Think again. In declining to rehear this case en banc, an essentially evenly divided Fifth Circuit allowed relief to proceed against the State under Mississippi's Readmission Act. And that "decision is an affront to the principles of Federalism embodied in *Pennhurst [State Sch. & Hosp. v. Halderman*, 465 U.S. 89 (1984)]." *Williams on behalf of J.E. v. Reeves*, 981 F.3d 437, 446 (5th Cir. 2020) (Jones, J., dissenting from denial of rehearing en banc). This is so because, while plaintiffs superficially point to the Readmission Act, what they seek in substance is relief requiring state officials to conform their conduct to state law *qua* state law.

To be sure, in enacting the Readmission Acts, Congress triggered its Guarantee Clause authority—imposing congressional conditions on congressional representation and evaluating whether States had adopted constitutions that were "republican." One of the congressional conditions in the identical Readmission Acts for Mississippi, Virginia, and Texas concerned "school rights and privileges" secured by 1868 state law.

In pertinent part, the acts provide:

[T]he constitution of [the State] shall never be so amended or changed as to deprive any citizen or class of citizens of the United States the school rights and privileges secured *by the Constitution of said State*.

---

[2] *Williams on behalf of J.E. v. Reeves*, 981 F.3d 437, 438 (5th Cir. 2020) (Jones, J., dissenting from denial of rehearing en banc).

Act of February 23, 1870, ch. XIX, 16 Stat. 67 (Mississippi) (emphasis supplied); Act of January 26, 1870, ch. X, 16 Stat. 62 (Virginia); Act of March 30, 1870, ch. XXXIX, 16 Stat. 80 (Texas).

The acts thus specify that the States of Mississippi, Virginia, and Texas shall not amend state law so as to violate state law. Yet a change in state law—even one that could be said to provide fewer state law rights—is still *state law*.

B.   In 1868, Mississippi's general education clause provided for a "uniform system of free public schools" that was guaranteed for *only* "four months." MISS. CONST. of 1868, art. VIII, §§ 1, 5. Additionally, in 1868, that "uniform system" of schools included schools that tragically were segregated, and "only the elementary branches of learning were taught[.]" *Morris v. Vandiver*, 145 So. 228, 235 (Miss. 1933).

Today, and quite unremarkably, state constitutional law reads differently than it did 150 years ago. Mississippi's general education proviso now provides: "The Legislature shall, by general law, provide for the establishment, maintenance and support of free public schools upon such conditions and limitations as the Legislature may prescribe." MISS. CONST. art VIII, § 201. Because state law today reads differently than state law in 1868, plaintiffs oddly contend that the State has violated the congressional terms that readmitted it to Congress.

To remedy such a purported "Readmission Act" violation, plaintiffs request declaratory relief in the form of a two-part federal declaration. First, plaintiffs seek a declaration that the "'requirements of Article VIII, Section 1 of the [State]

Constitution of 1868 remain legally binding on the [state] [d]efendants, their employees, their agents, and their successors.'" *Williams v. Reeves,* 954 F.3d 729, 734 (5th Cir. 2020).   Second, plaintiffs seek a declaration that "'Section 201 of the Mississippi Constitution is violating the Readmission Act.'" *Id.* As plaintiffs summarized in their panel brief, they seek declaratory relief "that State officials remain bound by the 1868 [State] Constitution's uniformity guarantee." Pl. Panel Br. at 2.[3]

    C.    A panel of the Fifth Circuit easily determined that the so-called "uniformity guarantee" is (*or was*) a right granted only by state law. As a result, the panel held that *Pennhurst* bars the federal court from declaring that state officials remain bound by 1868 state law. Curiously, though, the panel also held that *Pennhurst* does not bar a declaration that state officials are violating the Readmission Act precisely because they do not remain bound by 1868 state law.

    Such an inconsistent application of the Eleventh Amendment was error of constitutional dimension. As Judge Jones explains in her dissent:

> *Pennhurst* clearly forbids federal courts from adjudicating claims of state law against nonconsenting sovereign states in federal court. The panel here nonetheless issued a Janus-faced opinion, finding one of the plaintiffs' claims barred according to *Pennhurst,* while permitting another, virtually identical claim, to move forward in the district court…State sovereign immunity should bar this suit in its entirety based on *Pennhurst.*

*Williams,* 981 F.3d at 439 (Jones, J., dissenting from denial of rehearing en banc).

---

[3] Given the 1868 Constitution's extremely limited state law guarantee of only four months of school, it is bizarre that 1868 state law is where plaintiffs seek to return.

All in all, the Eleventh Amendment analysis here is straightforward. The "school rights" referred to in the Readmission Acts are rights secured by state law. Thus, the alleged "ongoing violation" is not one of federal law.

D.      What's more, although plaintiffs allude to *Ex parte Young*, 209 U.S. 123 (1908), *Ex parte Young* itself does not create a cause of action. Instead, "*Ex parte Young* provides a path around sovereign immunity *if* the plaintiff already has a cause of action from somewhere else." *Michigan Corrections Organization v. Michigan Dept. of Corrections*, 774 F.3d 895, 905 (6th Cir. 2014) (emphasis in original). Here, plaintiffs do not have a cause of action "somewhere else." Neither the Declaratory Judgment Act, 42 U.S.C. § 1983, nor the Readmission Acts create any private cause of action or privately enforceable federal rights.

As Judge Jones's dissent explains, "[n]o claim can be brought under *Ex parte Young* unless the Readmission Act can be enforced by private parties. That any such implied cause of action exists is, however, untenable." *Williams*, 981 F.3d at 444 (Jones, J., dissenting from denial of rehearing en banc). Because there is not a private cause of action, invoking *Ex parte Young* gets plaintiffs nowhere. In fact, *Ex parte Young* is accepted as necessary *only* to "'permit the federal courts to vindicate *federal rights*.'" *Virginia Office for Protection and Advocacy v. Stewart*, 563 U.S. 247, 255 (2011) ("*VOPA*") (quoting *Pennhurst*, 465 U.S. at 105) (emphasis supplied). Here, there are no federal rights for the federal courts to vindicate.

To the contrary, the Readmission Acts are unique and extraordinary statutes, and any enforcement of the acts is in the exclusive domain of Congress.[4] In that regard, the Eleventh Amendment poses no bar to *Congress's* enforcement of the Readmission Acts—as the Eleventh Amendment constrains the extent to which the "*Judicial* power…extend[s]." U.S. CONST. amend. XI (emphasis supplied).[5] And, here, the relief sought would construe the judicial power to extend beyond that allowed by the Eleventh Amendment.

A stay is therefore appropriate because there is a reasonable probability that four Justices will grant certiorari and a fair prospect that a majority of this Court will reverse the court of appeals. Similarly, irreparable harm isn't just likely to result from the denial of a stay—it is certain to result. "State sovereign immunity, no less than the right to trial by jury in criminal cases, is constitutionally protected." *Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.,* 527 U.S. 666, 682 (1999). And "the value to the States of their Eleventh Amendment immunity…is for the most part lost as litigation proceeds past motion practice." *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy Inc.*, 506 U.S. 139, 145 (1993).

---

[4] A three-judge panel interpreting the act "admitting Virginia to representation in Congress" reasoned as follows: "Such a matter is one peculiarly within the domain of Congress itself, since it only purports to set up a condition governing Virginia's right to admission to representation in Congress." *Butler v. Thompson*, 97 F. Supp. 17, 20 (E.D. Va.) (three judge panel), *aff'd,* 341 U.S. 937 (1951); *Merritt v. Jones,* 259 Ark. 380, 389, 533 S.W.2d 497, 502 (1976) ("enforcement [of a State's Readmission Act] is in the exclusive domain of Congress").

[5] For example, the State of Georgia was re-admitted to Congress twice—and Congress's exclusion of Georgia's representatives didn't implicate the Eleventh Amendment.

Thus, absent a recall and stay of the mandate, the State will altogether lose its immunity *from suit. Singleton v. Wulff,* 428 U.S. 106, 121 (1976). To preserve that immunity, and pursuant to Rule 23 of the Rules of this Court, the Court should recall and stay the mandate of the court of appeals pending the timely filing and disposition of the State's petition for a writ of certiorari.

## DECISION UNDER REVIEW

The Fifth Circuit panel opinion is reported at *Williams On Behalf of J.E. v. Reeves,* 954 F.3d 729 (5th Cir. 2020), and attached as Appendix A.

The Fifth Circuit's denial of rehearing en banc, with an eight-judge dissent, is reported at *Williams on behalf of J.E. v. Reeves,* 981 F.3d 437 (5th Cir. 2020), and attached as Appendix B.

The Fifth Circuit single-judge order denying the motion to stay the mandate is attached as Appendix C.

The Fifth Circuit panel order denying the motion to stay the mandate is attached as Appendix D.

## JURISDICTION

This appeal stems from a final judgment of the district court dismissing this suit in its entirety based on the Eleventh Amendment. A panel of the Fifth Circuit affirmed in part and vacated and remanded in part the district court's order.

The State filed a petition for rehearing en banc, which temporarily stayed issuance of the mandate. That petition was denied on December 7, 2020. Eight Fifth Circuit judges voted for rehearing and nine voted against rehearing. Judge Edith Jones also authored an eight-judge dissent from the denial of rehearing en banc.

The State filed a request with the Fifth Circuit to stay its mandate pending certiorari review by this Court. That request was denied by the author of the panel decision on December 14, 2020. On December 20, 2020, the State filed a motion for panel reconsideration. That request was denied on the evening of January 6, 2020, by the same Fifth Circuit panel that issued the panel decision. The Fifth Circuit issued the mandate the same day it denied the motion to stay. Thus, the Fifth Circuit's mandate issued on January 6, 2020.

This Court has jurisdiction to enter a recall and stay of the Fifth Circuit's judgment pending review on a writ of certiorari. *See* 28 U.S.C. §§ 1254(1), 2101(f), 1651(a).

## STATEMENT OF THE CASE

A.   The events leading up to the passage of the Readmission Acts are no doubt tumultuous. By the time President Lincoln took office, the States of the lower South had seceded and formed a provisional government. And, by May 1861, the Union as Americans had known it had collapsed.

While the Civil War ended in April 1865, the Reconstruction Period was just beginning. During reconstruction, southern States went through political convulsions—state governments were made, unmade, and remade. Moreover, as the former confederate states had seceded, they lacked representation in Congress.

In 1867, the First Reconstruction Act provided that the State involved would be "declared entitled to representation in Congress" when certain events had occurred,

8

including congressional approval of a State's constitution.[6] Shortly thereafter,

Congress triggered the Guarantee Clause[7] and began passing Readmission Acts.

In pertinent part, Mississippi's Act provides:

*An Act to admit the State of Mississippi to Representation in the Congress of the United States.*

WHEREAS the people of Mississippi have framed and adopted a constitution of State government which is republican…and whereas the performance of these several acts in good faith is a condition precedent to the representation of the State in Congress….

*** And provided further, That the State of Mississippi is admitted to representation in Congress…upon the following fundamental conditions:
…
'Third, That the constitution of Mississippi shall never be so amended or changed as to deprive any citizen or class of citizens of the United States the school rights and privileges secured by the Constitution of said State.

16 Stat. 67.

B.     In May 2017, four parents ("plaintiffs") sued several state officials, in

their official capacities, claiming that prior amendments to Mississippi's

Constitution, dating back to 1890, violated the Readmission Act, and that state

officials must "abide by the 1868 [Mississippi] Constitution's uniformity guarantee."

*See* Pl. Panel Br. at 30.

The State filed an early motion to dismiss on several grounds—including (i)

sovereign immunity; (ii) the Readmission Acts create no private right of action; (iii)

---

[6] First Reconstruction Act of 1867, ch.153, 14 Stat. 428 (1867) at 429, § 5.
[7] *Texas v. White*, 74 U.S. 700, 701, 7 Wall. 700 (1868).

political question; and (iv) standing. ROA.135-169. The district court dismissed plaintiffs' claim on Eleventh Amendment grounds and denied plaintiffs' motion to amend because the amendment would be futile. ROA.273-281, 357-363.

The district court then entered a final judgment and dismissed this case.

C.   Plaintiffs appealed and reiterated their two-fold request for declaratory relief: (i) that state officials remain obligated to comply with the 1868 State Constitution's uniformity clause, and (ii) that the current version of Section 201 violates the Readmission Act's congressional condition concerning school rights secured by the Constitution of Mississippi.  A panel of the Fifth Circuit correctly dismissed the first portion of that request as barred by the Eleventh Amendment. But the panel allowed the other, virtually identical, request for relief to proceed.

Because the panel's decision conflicts with the principles of Federalism that underlie the Eleventh Amendment, the State of Mississippi petitioned for rehearing en banc. The States of Texas and Louisiana filed an amicus brief in support of Mississippi's petition.

Seven months later, the en banc Fifth Circuit denied that petition. Eight judges voted for rehearing and nine voted against, and Judge Jones authored an eight-judge dissent.

Judge Jones's dissent concluded that sovereign immunity bars this suit in its entirety. This is so because the "sought-for judgment, in essence, would tell Mississippi what its state Constitution meant then and means now and would pave the way for federal court orders to effect a major restructuring of state school funding.

Federal courts, however, have no business interpreting and enforcing state law against state government." *Williams*, 981 F.3d at 439 (Jones, J., dissenting from denial of rehearing en banc).

Further, the dissent reasoned that the Readmission Acts do not create a private right of action, express or implied. *Id.* at 443-446. And "[n]o claim can be brought under *Ex parte Young* unless the Readmission Act can be enforced by private parties." *Id.* at 444.

D.    The State moved to stay the Fifth Circuit's mandate pending the filing and disposition of a petition for writ of certiorari. By single-judge order, the author of the panel decision denied that motion. The State sought panel reconsideration of the single-judge order. *See* FED. R. APP. P. 27(c); 5TH CIR. R. 27.2. The same Fifth Circuit panel that issued the panel decision denied the motion to stay and issued the mandate on the same date.

## REASONS FOR GRANTING THE STAY

A stay is appropriate when there is (1) "a 'reasonable probability' that four Justices will consider the issue sufficiently meritorious to grant certiorari or to note probable jurisdiction;" (2) "a fair prospect that a majority of the Court will conclude that the decision below was erroneous;" and (3) "a demonstration that irreparable harm is likely to result from the denial of a stay." *Rostker v. Goldberg*, 448 U.S. 1306, 1308 (1980) (Brennan, J., in chambers); *Hollingsworth v. Perry*, 558 U.S. 183, 190 (2010) (per curiam). "[I]n a close case it may be appropriate to 'balance the equities'

— to explore the relative harms to applicant and respondent, as well as the interests of the public at large." *Rostker*, 448 U.S. at 1308.

All elements are satisfied here. Further, this dispute centers only upon pure questions of law, rather than fact. *See* ROA.50, ROA.325 (plaintiffs contending their claim "presents a pure question of law"). And the equities support maintaining the status quo for the few months necessary for this Court to decide the State of Mississippi's certiorari petition.

## I.   There is a Reasonable Probability that this Court will Grant Certiorari.

This case presents a weighty constitutional question of exceptional importance: May litigants privately enforce the congressional acts that readmitted the former confederate states to Congress when the claim is comprised, in sum and substance, of alleged violations of state law, and the effect of the relief sought would vindicate a right granted only under a prior State Constitution? At least four Justices are likely to conclude that further review of such a question is warranted.

To be sure, by answering the above question in the affirmative, the court of appeals allowed relief to go forward that holds captive profound notions of Federalism and attempts to place States in a constitutional "strait-jacket."[8] Additionally, because the court of appeals decided important constitutional questions in a way that conflicts with relevant decisions from this Court, Sup. Ct. R. 10(c), an essentially evenly divided en banc Fifth Circuit would have (correctly) answered the above question in the negative.

---

[8] *Butler*, 97 F. Supp. at 20.

Notably, too, the remarkable and unprecedented nature of the type of claim brought by plaintiffs was not lost on the court of appeals, as the author of the panel opinion labeled the effect of the relief sought as "seismic."[9] Where important constitutional issues such as the ones presented here are at stake, this Court often finds a reasonable probability four Justices would grant certiorari. *See, e.g., Hollingsworth*, 558 U.S. at 190-91; *Cal. v. Am. Stores Co.*, 492 U.S. 1301, 1305 (1989).

Plus, this case is particularly cert-worthy because the requests for relief are *doubly* problematic under the Eleventh Amendment. First, the only "school rights and privileges" at issue are rights secured by the former State Constitution and rights secured by the current State Constitution. Thus, the substance of the relief sought would vindicate rights only ever secured by state law. If *Pennhurst* means anything, it means plaintiffs' suit is barred.

Second, plaintiffs fail to satisfy *Ex parte Young* because the Readmission Acts create no private right of action. "Even in a case involving relief sought under *Ex parte Young,* courts must determine whether Congress intended private parties to enforce [a] statute by private injunction or for that matter by a declaratory judgment." *Michigan Corrections Organization*, 774 F.3d at 905. The Fifth Circuit, however, rejects this rationale. *Williams*, 954 F.3d at 736 n.5.

---

[9] Oral. Arg. Rec. 2:21-2:22 (Higginson, J.). "Oral Arg. Rec." refers to the audio recording for the October 8, 2019 oral argument. Citations indicate the minute and second of the audio file.
    *Available at* http://www.ca5.uscourts.gov/OralArgRecordings/19/19-60069_10-8-2019.mp3.

That the Fifth Circuit departs from other Circuits and refuses to consider whether there are any privately enforceable federal rights to vindicate vis-à-vis *Ex parte Young* presents a cert-worthy question on which there is a circuit conflict that merits resolution by this Court. *See* Sup. Ct. R. 10(a).

* * *

In 150 years, no court has accepted a private litigant's attempt to refashion the Readmission Acts into privately enforceable federal mandates used to dictate and adjudicate rights secured only by state law. It is easy to see why four Justices would grant certiorari. *Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.*, 561 U.S. 477, 505 (2010) ("'Perhaps the most telling indication of [a] severe constitutional problem'…'is the lack of historical precedent[.]'") (quoting Kavanaugh, J., dissenting in the court below); *Alden v. Maine*, 527 U.S. 706, 727 (1999) ("[W]e have looked to history and experience, and the established order of things…in determining the scope of the States' constitutional immunity from suit.").

## II.   There is at least a Fair Prospect that the Court will Reverse the Decision Below.

The three States in the Fifth Circuit, and many Fifth Circuit judges, all determined that the Fifth Circuit's panel decision is in tension with seminal Eleventh Amendment principles and jurisprudence. Indeed, one of the Eleventh Amendment's core functions is to protect States from federal-court intrusion into their sovereignty. *See Pennhurst*, 465 U.S. 89. But plaintiffs can prevail on their "Readmission Act" claim only by persuading a federal court to undertake such an intrusion, *i.e.*, to find

that Mississippi has violated school rights granted exclusively by its own 1868 Constitution when it adopted and amended a new State Constitution.

As this Court reasoned in *Pennhurst*, "it is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law." *Pennhurst*, 465 U.S. at 106. Perhaps the only worse invasion of state sovereignty is for a federal court to instruct state officials on how to conform their conduct not to current state law—but state law *from 1868*.

The relief sought here would undermine state sovereignty in an unprecedented and direct way. And the Eleventh Amendment does not permit such a real and anomalous intrusion. *Pennhurst* bars both of plaintiffs' requests for declaratory relief, and plaintiffs otherwise cannot use *Ex parte Young* to sidestep Mississippi's immunity from this suit.

### A. The Eleventh Amendment prohibits declaratory relief instructing state officials that they remain bound by, and must conform their conduct to, 1868 state law.

Plaintiffs' primary contention is that state officials in Mississippi "remain obligated to provide a uniform system of public schools." Pl. Panel Br. at 26. According to plaintiffs, such a declaration does not violate the Eleventh Amendment because it "unquestionably dictate[s] future conduct on the part of State officials[.]" Pl. Panel Br. at 26; *id.* at 15 ("A declaration that Appellees are bound by the uniformity guarantee is equally prospective because State officials would, going forward, have to comply with the uniformity guarantee.").

Plaintiffs have always missed the point. The problem with this request for relief isn't that it would fail to "dictate future conduct." The problem is that it would "dictate" to state officials how to conform their "future conduct" to state law.

In trying to argue otherwise, plaintiffs turned to *Papasan v. Allain,* 478 U.S. 265, 277 (1986) for support. In *Papasan,* this Court first considered a claim that particular federal grants of land to Mississippi created a perpetual trust for the benefit of the public schools, with the State acting as trustee. *Id.* at 279. The complaint "sought a declaration that the state legislation…was void and unenforceable." *Id.* at 275; *id.* at 296-97.

To begin its analysis, the Court assumed that the land trust imposed specific obligations on the state and state officials acting as trustees. *Id.* at 279. The plaintiffs contended that this was a continuing obligation placed upon these state actors and therefore actionable under *Ex Parte Young*. This Court rejected that claim as barred by the Eleventh Amendment. *Id.* at 280.

That said, *Papasan* did find permissible a separate request for relief. The plaintiffs there also alleged the denial of the economic benefit of public-school lands more than 100 years earlier resulted in an alleged present-day disparity in school funding. *Id.* at 267–68. The Eleventh Amendment did not bar that request. *Id.*

Here, plaintiffs at least superficially endeavored to word their requests for relief similar to that deemed permissible in *Papasan. See* Pl. Panel Br. at 21 ("[T]he Mississippi Constitution…no longer contains a uniformity guarantee. As a direct consequence, State officials are currently providing a disuniform system of public

schools."). But the difference between the relief in *Papasan* and the relief requested here is that the latter is barred by *Pennhurst*.

The "prospective relief" in *Papasan* sought to remedy an alleged ongoing federal equal-protection violation. In contrast to *Papasan*, plaintiffs do not bring an equal-protection claim. Instead, they turn to the 1870 Readmission Act and claim that the current State Constitution conflicts with the 1868 State Constitution because it no longer contains a uniformity guarantee.

But even if the State allegedly was providing a "disuniform system of public schools," that would and could only violate Mississippi state law—and, even then, only *if* state law still contained a uniformity clause. Thus, unlike *Papasan*, the relief sought here runs headlong into *Pennhurst*.

### B. The Eleventh Amendment bars the federal court from issuing a declaration that current state law violates the school rights and privileges secured by 1868 state law.

The Readmission Acts for Mississippi, Virginia, and Texas provide that the Constitutions of the respective States "shall never be so amended or changed as to deprive any citizen" of "the school rights and privileges secured by the Constitution of said State." 16 Stat. 67. That the words "school rights and privileges" appear in a federal statute does not support the court of appeals' conclusion that the Eleventh Amendment does not bar the requested relief.

The court of appeals reasoned that plaintiffs satisfied *Ex parte Young* because they seek relief "for an ongoing violation" of law that "schoolchildren *today* are deprived of their school rights[.]" *Williams*, 954 F.3d at 738 (emphasis in original). The Eleventh Amendment, however, is not so easily overcome. *See Papasan*, 478 U.S.

at 277 (explaining that the Court has carefully avoided "stretch[ing] [*Ex parte Young*] too far and…upset[ting] the balance of federal and state interests that it embodies").

For starters, the "school rights and privileges" language in the Readmission Act cannot be divorced from the remainder of the Act's text: "the school rights and privileges *secured by the Constitution of said State*." Thus, the "school rights" referred to by court of appeals necessarily are rights secured only by state law.

Relatedly, courts don't adhere to empty formalism when applying *Ex parte Young*. As this Court often has warned, the scope of the States' immunity turns on the real values at stake, rather than on the "elementary mechanics of captions or pleading." *Idaho v. Couer d'Alene Tribe,* 521 U.S. 261, 270 (1997); *see id.* ("Application of the *Young* exception must reflect a proper understanding of its role in our federal system and respect for state courts instead of a reflexive reliance on an obvious fiction."); *Ex parte New York*, 256 U.S. 490, 500 (1921) (*Ex parte Young*'s applicability "is to be determined…by the essential nature and effect of the proceeding, as it appears from the entire record").

 Courts must look to the character of the State's putative violation of law and "the substance rather than the form of the relief sought." *Papasan,* 478 U.S. at 279; *VOPA*, 563 U.S. at 256 (it is the "'*effect* of the relief sought'" that matters) (quoting *Pennhurst*, 465 U.S. at 107) (emphasis in original). Here, the character of the State's alleged ongoing violation of law is that state officials today are not conforming their conduct to state law as it was 150 years ago.

On appeal, even plaintiffs recognized that their requested relief is problematic. Indeed, plaintiffs resorted to the tactic of arguing that the Readmission Acts actually "incorporated" 1868 state constitutional law. In other words, that the Constitutions of ten States were "federalized" and somehow became federal law when congressional representatives were readmitted to Congress.[10]  That cannot possibly be the law, and it would raise even more significant constitutional concerns if it were.

The court of appeals correctly rejected plaintiffs' incorporation argument— concluding that federal law did "not explicitly incorporate any of the language, requirements, or provisions of the 1868 Constitution." *Williams*, 954 F.3d at 740. Nevertheless, the court tried (but failed) to thread a needle and find *Ex parte Young* satisfied by comparing the current version of the Mississippi Constitution to a purportedly "invalid law" that "produces consequences long after the date of its enactment." *Id.* at 738.

But how exactly is the State's education clause in its own Constitution invalid—let alone invalid *under federal law*? The court of appeals didn't answer that question, and it failed to grapple with the only answer plaintiffs supplied.  That is, the reason plaintiffs contend state law is "invalid" is because it "no longer contains a uniformity guarantee." Pl. Panel Br. at 21.

But if prior state law never contained a uniformity clause, there would be no "federal" cause of action here *even in name*. Indeed, it is only 1868 state law that ever

---

[10]  Plaintiffs argued that the Readmission Acts set "a federal floor for education…Congress chose as the content of that floor…state law." Oral Arg. Rec. 00:29-00:41.

mentioned a requirement for a "uniform system of free public schools." It is thus axiomatic that the school rights in 1868 were state-law school rights, and they are state-law school rights today.

So it is a fundamentally false premise that plaintiffs are asking the court only to consult or ascertain state law on the way to adjudicating a federal claim. There is, instead, no federal cause of action. As Judge Jones's dissent explains, plaintiffs request the federal court to: "(1) interpret two state constitutional provisions, the 1868 uniformity guarantee and Section 201; (2) determine whether they are compatible or in conflict; and then (3) declare whether officers of state government are in violation of the state constitution." *Williams*, 981 F.3d at 442-43 (Jones, J., dissenting from denial of rehearing en banc). That is "quintessentially a task for Mississippi's courts." *Id.* at 443.

That plaintiffs seek a declaratory judgment—as opposed to monetary or injunctive relief—does not allow them to bypass the Eleventh Amendment. Just as plaintiffs are not entitled to injunctive relief requiring state officials to (re)enact and abide by 1868 state law, they are not entitled to a declaration amounting to the same relief. *Green v. Mansour*, 474 U.S. 64, 73 (1985) ("[A] declaratory judgment is not available when the result would be a partial 'end run'" around the Eleventh Amendment.).

Indeed, imagine if plaintiffs caught the proverbial car and received a federal declaration that the State is violating its congressional Readmission Act because, in amending its State Constitution, it removed the requirement for a "uniform system

of free public schools." What is next? The Fifth Circuit determined that *Pennhurst* bars a federal court from declaring that state officials remain obligated to comply with any particular provision of prior or current state constitutional law.  Thus, we at least know that the federal court cannot declare to the State how its State Constitution must read or declare that state officials must comply with Article VIII, Section 1 of the 1868 Mississippi Constitution. And we know that federal courts do not erase state laws—nor do they enact and/or re-enact state constitutional provisions. *See* Jonathan F. Mitchell, *The Writ-of-Erasure Fallacy*, 104 VA. L. REV. 933, 935-37 (2018).[11]

So, at the end of the day, what must Article 8, Section 201 of the Mississippi Constitution say to satisfy the sought-after federal declaration that the State is violating the Readmission Act? The answer to that question is (and should be) simple: exactly what it says now—because it is state constitutional law ratified by the Mississippi electorate. And while plaintiffs may superficially and nominally point to a federal law, their claim is comprised, in sum and substance, only of alleged violations of 1868 state-law rights.

The Eleventh Amendment bars this lawsuit. *Williams*, 981 F.3d at 443 (Jones, J., dissenting from denial of rehearing en banc) ("Further demonstrating the abuse

---

[11] *See also, e.g., Barr v. American Ass'n of Political Consultants, Inc.*, 140 S. Ct. 2335, 2351 n.8 (2020); *Collins v. Mnuchin*, 938 F.3d 553, 611 (5th Cir. 2019) (Oldham, J. and Ho., J, concurring in part); Howard M. Wasserman, *Precedent, Non-Universal Injunctions, and Judicial Departmentalism: A Model of Constitutional Adjudication*, 23 LEWIS & CLARK L. REV. 1077, 1080 (2020) (explaining why "[c]onstitutionally defective laws do not disappear or cease to be law following a judicial ruling" and "[c]ourts cannot repeal or eliminate a law, and a law remains on the books until repealed by the relevant legislature").

of state sovereign immunity, it is plain that, if successful, plaintiffs' request for a declaratory judgment would surely be followed by a plea for injunctive relief against the state defendants. The only relief compatible with plaintiffs' claim as to the Readmission Act would order the defendants to comply with Article VIII, Section 1 of the 1868 constitution. As the panel understood (regarding plaintiffs' claim for a direct declaration of state law), such an order would run afoul of *Pennhurst*...The affront to the state's enforcement of its constitution and management of its educational system is manifest.").

Moreover, while the Readmission Acts certainly are unique, the State's Eleventh Amendment analysis is not. Even with more contemporary laws, courts recognize that claims asserted under federal law may functionally be state-law claims. Otherwise, "the Eleventh Amendment, and not *Ex parte Young*, would become the legal fiction." *Verizon Maryland, Inc. v. Public Service Comm'n of Maryland*, 535 U.S. 635, 649 (2002) (Kennedy, J., concurring).

For instance, the Fourth and Third Circuits have concluded that, pursuant to *Pennhurst* and fundamental Federalism principles, lawsuits challenging States' regulation of mining practices that were established under a federal environmental statute did not fall within the *Ex parte Young* exception. *Bragg v. W. Virginia Coal Ass'n*, 248 F.3d 275, 295-97 (4th Cir. 2001) (discussing a claim brought under the Surface Mining Control and Reclamation Act ("SMCRA") and reasoning that "particularly in the absence of an explicit incorporation of State law into federal law...States retain a unique interest in the enforcement of their own law");

*Pennsylvania Federation of Sportsmen's Clubs, Inc. v. Hess*, 297 F.3d 310, 327 (3d Cir. 2002) (same).

Although the 1870 congressional delegation likely wasn't contemplating *Pennhurst* on the heels of the Civil War, Congress also wasn't intending enforcement of the Readmission Acts via Section 1983 or *Ex parte Young*. Indeed, Congress did not enact Section 1983 until 1871—and, even then, Section 1983 provided remedies *only* for constitutional violations. *Maine v. Thiboutot*, 448 U.S. 1, 6-7 (1980).

Likewise, *Ex parte Young* was not decided until 1908, and the Supreme Court did not render its decision in *Pennhurst* until 1984. That these now-familiar legal theories were foreign in 1870 explains the difficulty in attempting to hammer a concept like the Readmission Act into the more refined concepts of Section 1983, *Ex parte Young*, and *Pennhurst*.

But there can be no doubt that Mississippi's Constitution, like the constitutions of all other States, is solely the product of its own sovereignty. And, in amending its Constitution pursuant to its democratic processes, the State simply has done what every sovereign has the power to do: craft a State Constitution that it believes promotes the wellbeing of its citizens.

The educational rights granted exclusively by that State Constitution (or a prior Constitution for that matter) are not for litigants to dictate and/or adjudicate in federal court. As a result, plaintiffs cannot create and enforce the educational "right" that this Court rejected in *San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1

(1973), by relabeling it as a request for declaratory relief brought under the congressional Acts that readmitted States to Congress after the Civil War.

>   **C.    Plaintiffs cannot utilize *Ex parte Young* to sidestep the Eleventh Amendment because plaintiffs have no private cause of action and no federal rights for the federal courts to vindicate.**

*Ex parte Young* does not create a cause of action where none exists; it removes the sovereign's shield from suit on a pre-existing private cause of action. Indeed, "[s]ince *Ex parte Young*…it has been settled that the Eleventh Amendment provides no shield for a state official confronted by a claim that he had deprived another *of a federal right* under the color of state law." *Hafer v. Melo*, 502 U.S. 21, 30 (1991) (citation omitted) (emphasis supplied)).

Here, plaintiffs seek a declaratory judgment and invoke *Ex parte Young*, 42 U.S.C. § 1983, and the State's Readmission Act as a means of sidestepping Mississippi's immunity from suit. Yet because neither the Declaratory Judgment Act, *Ex parte Young*, Section 1983, nor the congressional Readmission Acts create a private cause of action or contain privately enforceable federal right(s), plaintiffs' claim remains barred by the Eleventh Amendment.

**The Declaratory Judgment Act.** The Declaratory Judgment Act authorizes federal courts to declare the rights of a party in a case without granting any other relief. 28 U.S.C. § 2201. "[T]he operation of the Declaratory Judgment Act is procedural only." *Aetna Life Ins. Co. of Hartford, Conn. v. Haworth*, 300 U.S. 227, 240 (1937). The Declaratory Judgment Act thus creates a remedy for a preexisting right enforceable in federal court—it *does not* provide an independent basis for federal

subject matter jurisdiction. *See Skelly Oil Co. v. Phillips Petroleum Co.,* 339 U.S. 667, 671–72 (1950).

Such an independent source of rights exists when, at the time of the lawsuit, one of the parties already could bring a "coercive" action that Congress authorized the federal courts to hear. *Medtronic, Inc. v. Mirowski Fam. Ventures, LLC*, 571 U.S. 191, 197 (2014) (quotation omitted). "A party may bring a 'coercive action' only when a private right of action authorizes the party to seek 'an immediately enforceable remedy like money damages or an injunction.'" *Michigan Corrections Organization*, 774 F.3d at 902 (quoting *Skelly Oil,* 339 U.S. at 671).

Here, there is no private right of action available under *Ex parte Young*, Section 1983, or the Readmission Acts.

***Ex parte Young****. Ex parte Young* does not create a federal cause of action where one otherwise could not be brought. Indeed, federal causes of action are Congress's to authorize. *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001) ("Like substantive federal law itself, private rights of action to enforce federal law must be created by Congress.").

Likewise, this Court has reaffirmed that causes of action do not come from the Supremacy Clause: "the Supremacy Clause is not the 'source of any federal rights,' and certainly does not create a cause of action." *Armstrong v. Exceptional Child Center, Inc.*, 575 U.S. 320, 324-25 (2015) (quoting *Golden State Transit Corp. v. Los Angeles*, 493 U.S. 103, 107 (1989)) (cleaned up). The purpose of the Supremacy Clause

is instead to ensure that, in a conflict with state law, whatever Congress says goes. *Id.* at 325.

Here, the Fifth Circuit panel refused to consider whether there was a private cause of action or any privately enforceable federal rights to vindicate vis-à-vis *Ex parte Young*. Instead, the panel held there is "'no support'" for the proposition that courts "'determine the validity of a plaintiff's cause of action in the course of deciding whether an *Ex parte Young* suit can proceed in the face of a state's Eleventh Amendment defense.'" *Williams*, 954 F.3d at 736 n.5 (quoting *McCarthy ex rel. Travis v. Hawkins*, 381 F.3d 407 (5th Cir. 2004)).

But there is a big difference between determining the validity or merits of an existing federal cause of action and whether plaintiffs have *any* private federal cause of action at all. And the Fifth Circuit's rationale disregards that "[i]n order to invoke the *Ex parte Young* exception to sovereign immunity, a [plaintiff] needs...a federal right." *VOPA*, 563 U.S. at 260.

As courts outside the Fifth Circuit recognize, "[e]ven in a case involving relief sought under *Ex parte Young*, courts must determine whether Congress intended private parties to enforce [a] statute by private injunction or for that matter by a declaratory judgment." *Michigan Corrections Organization*, 774 F.3d at 905. To go further and allow *Ex parte Young* to be the source of a private right of action to enforce federal statutes against state officials would vitiate the very limitations on private rights of action under federal statutes.

Judge Sutton explains it well in *Michigan Corrections Organization*:

[*Ex parte Young*] applies when the requisite right of action exists and it remains a potent defense, particularly in preemption cases. Private parties who act in compliance with federal law may use *Ex parte Young* as a *shield* against the enforcement of contrary (and thus preempted) state laws...That makes sense, because an existing cause of action for that relief exists: an equitable anti-suit injunction...That's what happened in *Ex parte Young:* Several railroad companies asserted in equity the Fourteenth Amendment's Due Process Clause as a defense against future indictment for violating Minnesota's mandatory railroad rates. *See* 209 U.S. at 130, 28 S.Ct. 441; *Stewart,* 131 S.Ct. at 1642 (Kennedy, J., concurring). But matters differ when litigants wield *Ex parte Young* as a cause-of-action-creating *sword*. In that setting—today's setting—the State is not threatening to sue anyone, precluding an anti-suit injunction from doing the work. What is required is that Congress created a cause of action for injunctive relief in the statute or otherwise made § 1983 available.

*Id.* at 906 (emphasis in original).[12]

In short, *Ex parte Young* does not itself create any cause of action. Instead, "*Ex parte Young* provides a path around sovereign immunity *if* the plaintiff already has a cause of action from somewhere else." *Id.* at 905 (emphasis in original). Here, there is no federal cause of action "somewhere else."

**Section 1983**. Section 1983 is not a source of substantive rights, but serves as a mechanism for vindicating rights otherwise protected by federal

---

[12] *See, e.g., Town of Portsmouth v. Lewis,* 813 F.3d 54, 62 n.5 (1st Cir. 2016) ("The Town also suggests that a right of action lies under 42 U.S.C. § 1983 [and] *Ex parte Young*...But these avenues involve remedies, not rights, and they depend upon the existence of an enforceable federal right in the first instance, which does not exist here."); *Bio-Medical Applications of North Carolina, Inc. v. Electronic Data Systems Corporation,* 2006 WL 8438696, at *5 (E.D.N.C. Jan. 25, 2006) ("Because plaintiffs cannot show that these federal statutory provisions evidence intent to create a federal right...they cannot maintain a private cause of action...under the doctrine of *Ex Parte Young*."); *Mechenbier v. Lucero,* 2005 WL 8164259, at *3 (D.N.M. Feb. 11, 2005) ("*Ex parte Young* does not create a federal cause of action[.]").

law. *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002). Section 1983 creates a cause of action to enforce a federal statute only when the underlying statute itself unambiguously "confers an individual right" on the plaintiff. *Id.* at 284-85. Therefore, while private parties of course may enforce federal statutes through Section 1983 in some instances, this is not one of those instances.

**The Readmission Acts**. "No claim can be brought under *Ex parte Young* unless the Readmission Act can be enforced by private parties. That any such implied cause of action exists is, however, untenable." *Williams*, 981 F.3d at 444 (Jones, J., dissenting from denial of rehearing en banc).

"[T]o seek redress through § 1983,…a plaintiff must assert the violation of a *federal right*, not merely a violation of federal law." *Gonzaga*, 536 U.S. at 282 (emphasis supplied). And "private rights of action to enforce federal law must be created by Congress." *Sandoval*, 532 U.S. at 286 (citation omitted). Thus, the Court's watchword is caution in this arena, and the Court will not find an unenumerated right of action unless the text and structure of a statute show an unambiguous intent to create one. *Gonzaga,* 536 U.S. at 283 ("We now reject the notion that our cases permit anything short of an unambiguously conferred right to support a cause of action brought under § 1983."); *see Armstrong*, 575 U.S. at 332 (plurality op.) (same).

"There is nothing in the text, structure, or history of the Readmission Act that suggests any congressional intent to create a private right of action—much less an unambiguous one." *Williams*, 981 F.3d at 445 (Jones, J., dissenting from denial of rehearing en banc); *see also supra* n.5. Starting with history, Section 1983 had not

yet been enacted when Congress imposed conditions on Mississippi and other southern states. It was not until 1871 that Congress enacted Section 1983 as part of the Civil Rights Act. *See* Civil Rights Act of 1871, ch. 22, 17 Stat. 13. Similarly, when Congress originally enacted Section 1983 it read differently than now.

In 1871, Section 1 of the Civil Rights Act read, in pertinent part: "That any person who, under color of any law...of any State, shall subject...any person...to the deprivation of any rights, privileges, or immunities secured by the Constitution...shall...be liable." The 1871 version of Section 1983 thus did not provide a remedy for federal statutory violations—it provided remedies *only* for constitutional violations. *Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 608 (1979). Consequently, even when Congress enacted Section 1983 in the years after the Readmission Acts, there was not a congressional intent to confer individual rights enforceable through Section 1983.

Additionally, there is nothing in the text and structure of the Readmission Acts that show an unambiguous intent to create individual federal rights. None of the Readmission Acts mention a requirement for a uniform system of free public schools—let alone could the acts be said to manifest an unambiguous congressional intent to create such a right as required by *Gonzaga*. Worse still, even if a court were to survey 1868 state-law school rights, how would a federal court pick and choose from state law 150 years ago the school rights Congress supposedly meant, yet never expressed in statute, are to be privately enforceable federal rights?

*Gonzaga* rejected the notion that federal courts should be loosed from the mooring of unambiguous congressional intent, and obliged to "pick and choose" which federal requirements may be enforced in judicial actions and which may not. *Gonzaga*, 536 U.S. at 286 (discussing how separation-of-powers concerns caution against applying a "balancing test to pick and choose which federal requirements may be enforced by § 1983 and which may not"). If picking and choosing from *federal* requirements falls out of step with *Gonzaga*, picking and choosing from 1868 *state* requirements is particularly problematic under both *Gonzaga* and *Ex parte Young*.

In all events, litigants may use *Ex parte Young* to sue state officials to enforce a federal statute when the statute contains a privately enforceable *federal right*. *VOPA*, 563 U.S. at 255 (explaining that the *Ex parte Young* fiction is only "necessary to 'permit the federal courts to vindicate federal rights'") (quoting *Pennhurst*, 465 U.S. at 105). Here, plaintiffs have no private cause of action and no federal rights for the federal courts to vindicate.

\* \* \*

The Readmission Acts offered ten States a choice between two options: Comply with congressional conditions and congressional representatives will be reseated as members of Congress. Or do not comply and run the risk that representatives will not be reseated. Neither of those options creates an Eleventh Amendment problem.

This is so because the Eleventh Amendment poses no bar to congressional enforcement of the congressional Readmission Acts. The Eleventh Amendment constrains the extent to which the "Judicial power...extend[s]." U.S. CONST. amend.

30

XI. Accordingly, it is only when private litigants attempt to distort the Readmission Acts into privately enforceable federal mandates that the enforcement of the acts conflicts with the Eleventh Amendment. *Williams*, 981 F.3d at 444 (Jones, J., dissenting from denial of rehearing en banc) ("The [Readmission] Act's only enforcement mechanism lies in direct recourse to Congress.").

### III. There is a Likelihood that Irreparable Harm Will Result from the Denial of a Stay.

Under the Constitution, the States "retain 'a residuary and inviolable sovereignty.'" *Alden*, 527 U.S. at 715 (quoting The Federalist No. 39, at 245). "The limited and enumerated powers granted to the Legislature, Executive, and Judicial Branches of the National Government, moreover, underscore the vital role reserved to the States by the constitutional design[.]" *Id.* at 713; *see Hans v. Louisiana*, 134 U.S. 1, 13 (1890). The Eleventh Amendment therefore does not create the rights that are at stake here; the Eleventh Amendment confirms the rights that States had at the Founding.

And "State sovereign immunity, no less than the right to trial by jury in criminal cases, is constitutionally protected." *Coll. Sav. Bank,* 527 U.S. at 682. "The preeminent purpose of state sovereign immunity is to accord States the dignity that is consistent with their status as sovereign entities." *Federal Maritime Comm'n v. South Carolina Ports Authority,* 535 U.S. 743, 760 (2002) (internal quotation marks omitted).

Therefore, the mere initiation of a suit against the State by a private citizen is enough to violate that State's sovereign immunity, *see Seminole Tribe of Florida v.*

*Florida,* 517 U.S. 44, 58 (1996), and the constitutional injury commences upon the filing of the suit and continues as long as that action is pending. Further, the immunity does not turn on whether relief will be awarded; "[t]he Eleventh Amendment is concerned not only with the States' ability to withstand suit, but with their privilege not to be sued." *Puerto Rico Aqueduct,* 506 U.S. at 147, n.5.

Without such a recall and stay of the mandate, the State will altogether lose its immunity from suit. For example, once this case again proceeds in the district court, law of the case may prohibit the State from fully raising these particular Eleventh Amendment concerns in the district court or on a second appeal to the Fifth Circuit. Given this, the State is suffering and will continue to suffer irreparable harm absent a recall and stay of the mandate.

IV.    **The Balance of the Equities Heavily Favors the State.**

This is not a close case, so balancing the equities is not necessary for a stay. Nevertheless, the balance of the equities tips decidedly in favor of the State. Indeed, there is a critical difference between what Congress did to sew the Union back together and what plaintiffs seek to do here.

On the one hand, Congress triggered the Guarantee Clause to place congressional conditions on States prior to reseating congressional representatives. On the other hand, plaintiffs seek to refashion those conditions to confer individual rights to millions of students—with the understanding that those students can circumvent the democratic processes of the State and ask the federal court to dictate and adjudicate rights only ever secured by state law. "Such plenary federal control of

state governmental processes denigrates the separate sovereignty of the States." *Alden*, 527 U.S. at 749.

In contrast, a stay pending appeal will not harm the plaintiffs. The Readmission Acts were enacted approximately 150 years ago. When plaintiffs brought this lawsuit in 2017, they did not seek a preliminary injunction—nor have they (yet) asked for any injunctive relief. And the current status quo of this litigation is a final judgment dismissing plaintiffs' suit. The equities thus support maintaining the status quo for the few months necessary for this Court to decide the State's certiorari petition. *See Houchins v. KQED, Inc.*, 429 U.S. 1341, 1346 (1977) (Rehnquist, J.) ("[T]he preservation of th[e] status quo is an important factor favoring a stay.").

Moreover, interim relief in the form of a stay also is in the public interest. The current version of the Mississippi Constitution reflects the policy of the Mississippi Legislature, which "is in itself a declaration of [the] public interest." *Virginian Ry. Co. v. Sys. Fed'n No. 40*, 300 U.S. 515, 552 (1937). More importantly, Section 201 of the Mississippi Constitution is a declaration of the policy *of the citizens of Mississippi*. The 1987 amendment of Section 201 was proposed by Laws, 1987, Ch. 671, and it was ratified by the Mississippi electorate on November 3, 1987. Consequently, in attempting to alter the actual wording of state constitutional law, plaintiffs radically seek to override the educational policy choices of the State Legislature *and* the State's electorate.

In the same vein, with respect to state education clauses, does any singular clause provide objectively greater "school rights and privileges"? For example, the Readmission Acts for Virginia, Mississippi, and Texas contain an identical "school rights and privileges" condition.  While all three States had uniformity clauses in 1870, *none* have uniformity provisions in their respective education clauses today. *Compare* VA. Const. art. VIII, § 3 (1870) *with* VA. CONST. art. VIII, § 1; *Compare* TEX. CONST. art. IX, §§ I, IV (1869) *with* TEX. CONST. art. VII, § 1.

So, while plaintiffs contend that a "uniformity" clause would provide greater school rights than current state law, it is easy to see why another set of Mississippi citizens may contend the same about an "efficiency" clause, or a "common schools" clause, or Mississippi's current "free public schools" clause. *And so on.*

All these individuals, *including plaintiffs*, can voice their preferred educational policy at the ballot box. But it is "difficult to imagine a case having a greater potential impact on our federal system" than one where such individuals ask a federal court to interfere with a State's authority over public education and the school rights secured by state law. *Rodriguez*, 411 U.S. at 44.

## CONCLUSION

This Court should recall and stay the mandate of the court of appeals pending the timely filing and disposition of a petition for a writ of certiorari and any further proceedings in this Court.

Dated: January 11, 2021

                                Respectfully submitted,

                                LYNN FITCH
                                Attorney General of Mississippi

BY: *Krissy C. Nobile*

                                Krissy C. Nobile
                                    *Counsel of Record*
                                Justin L. Matheny
                                Candice L. Rucker
                                Drew D. Guyton
                                STATE OF MISSISSIPPI
                                OFFICE OF THE ATTORNEY GENERAL
                                P.O. BOX 220
                                Jackson, Mississippi 39205-002
                                (601) 359-3680
                                krissy.nobile@ago.ms.gov

                                *Counsel for Defendants-Applicants*