# United States Court of Appeals
# for the Fifth Circuit

No. 19-60069

INDIGO WILLIAMS, *on behalf of* HER MINOR CHILD J.E.;
DOROTHY HAYMER, *on behalf of* HER MINOR CHILD, D.S.;
PRECIOUS HUGHES, *on behalf of* HER MINOR CHILD, A.H.;
SARDE GRAHAM, *on behalf of* HER MINOR CHILD, S.T.,

*Plaintiffs—Appellants*,

*versus*

TATE REEVES, IN HIS OFFICIAL CAPACITY AS GOVERNOR OF MISSISSIPPI; PHILIP GUNN, IN HIS OFFICIAL CAPACITY AS SPEAKER OF THE MISSISSIPPI HOUSE OF REPRESENTATIVES; TATE REEVES, IN HIS OFFICIAL CAPACITY AS LIEUTENANT GOVERNOR OF MISSISSIPPI; DELBERT HOSEMANN, IN HIS OFFICIAL CAPACITY AS SECRETARY OF STATE OF MISSISSIPPI; CAREY M. WRIGHT, IN HER OFFICIAL CAPACITY AS STATE SUPERINTENDENT OF EDUCATION AND EXECUTIVE SECRETARY OF MS STATE BOARD OF EDUCATION; ROSEMARY AULTMAN, IN HER OFFICIAL CAPACITY AS CHAIR OF THE MISSISSIPPI STATE BOARD OF EDUCATION; JASON DEAN, IN HIS OFFICIAL CAPACITY AS MEMBER OF THE MISSISSIPPI STATE BOARD OF EDUCATION; BUDDY BAILEY, IN HIS OFFICIAL CAPACITY AS MEMBER OF THE MISSISSIPPI STATE BOARD OF EDUCATION; KAMI BUMGARNER, IN HER OFFICIAL CAPACITY AS MEMBER OF THE MISSISSIPPI STATE BOARD OF EDUCATION; KAREN ELAM, IN HER OFFICIAL CAPACITY AS MEMBER OF THE MISSISSIPPI STATE BOARD OF EDUCATION; JOHNNY FRANKLIN, IN HIS OFFICIAL CAPACITY AS MEMBER OF THE MISSISSIPPI STATE BOARD OF EDUCATION; WILLIAM HAROLD JONES, IN HIS OFFICIAL CAPACITY AS MEMBER OF


EXHIBIT B

THE MISSISSIPPI STATE BOARD OF EDUCATION; JOHN KELLY, IN HIS OFFICIAL CAPACITY AS MEMBER OF THE MISSISSIPPI STATE BOARD OF EDUCATION; CHARLES MCCLELLAND, IN HIS OFFICIAL CAPACITY AS MEMBER OF THE MISSISSIPPI STATE BOARD OF EDUCATION,

*Defendants—Appellees.*

Appeal from the United States District Court
for the Southern District of Mississippi
USDC No. 3:17-CV-404

ON PETITION FOR REHEARING EN BANC

(Opinion April 2, 2020, 5 CIR.,_____,_____ F.3D _____ )

Before JOLLY, GRAVES, and HIGGINSON, *Circuit Judges.*

PER CURIAM:

The court having been polled at the request of one of its members, and a majority of the judges who are in regular active service and not disqualified not having voted in favor (Fed. R. App. P. 35 and 5th Circ. R. 35), the petition for rehearing en banc is **DENIED.**

In the en banc poll, 8 judges voted in favor of rehearing (Judges Jones, Smith, Elrod, Willett, Ho, Duncan, Oldham, and Wilson), and 9 judges voted against rehearing (Chief Judge Owen and Judges Stewart, Dennis, Southwick, Haynes, Graves, Higginson, Costa, and Engelhardt).

19-60069

ENTERED FOR THE COURT:

_____
STEPHEN A. HIGGINSON
*United States Circuit Judge*

No. 19-60069, *Williams v. Reeves,*

EDITH H. JONES, Circuit Judge, joined by SMITH, ELROD, WILLETT,* HO,* DUNCAN, OLDHAM, and WILSON, Circuit Judges, dissenting from the denial of rehearing *en banc*

This strange case seeks a declaratory judgment that Mississippi's 1868 Constitution, which satisfied the terms of the post-Civil War Readmission Act of Congress, granted more educational rights to African-American children than an amendment to the state's Constitution in 1987. The sought-for judgment, in essence, would tell Mississippi what its state Constitution meant then and means now and would pave the way for federal court orders to effect a major restructuring of state school funding. Federal courts, however, have no business interpreting and enforcing state law against state government. Federalism, the principle of dual sovereignties, is a bedrock principle of our Founding and a bulwark of individual liberty because it diffuses the exercise of power by governments. Not only the Eleventh Amendment, but "the fundamental rule [of dual sovereignty] of which the Amendment is but an exemplification,"[1] protects states from abuse by federal courts. The Supreme Court expressed the basic roadblock to maintaining this suit in federal court:

> A federal court's grant of relief against state officials on the basis of state law, whether prospective or retroactive, does not vindicate the supreme authority of federal law. On the contrary, it is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law. Such a result conflicts directly with the principles of federalism that underlie the Eleventh Amendment.

*Pennhurst State School & Hosp. v. Halderman,* 465 U.S. 89, 106, 104 S. Ct. 900, 911 (1984).

*Pennhurst* clearly forbids federal courts from adjudicating claims of state law against nonconsenting sovereign states in federal court. The panel here

---

\* Judges Willett and Ho concur only in Parts I and IIB.
[1] *Ex Parte State of New York,* 256 U.S. 490, 497, 41 S. Ct. 588, 589 (1921).

1

nonetheless issued a Janus-faced opinion, finding one of the plaintiffs' claims barred according to *Pennhurst*, while permitting another, virtually identical claim, to move forward in the district court.

This court refused to order en banc reconsideration. I respectfully dissent. State sovereign immunity should bar this suit in its entirety based on *Pennhurst*. Moreover, such sovereign immunity includes immunity from suit, not simply adverse judgments; we should alternatively have dismissed the suit because the Mississippi Readmission Act created no implied private right of action on behalf of these plaintiffs.

## I. Background

Following the Civil War, Mississippi's readmission to full statehood required it to adopt a constitutional guarantee of a republican form of government to all state residents.[2] Mississippi adopted a constitution in 1868 that did just that. Article Eight of Mississippi's 1868 Constitution contained a series of provisions related to education and the establishment and maintenance of public schools. Section 1 of Article Eight, relevant to this case, provides:

> As the stability of a republican form of government depends mainly upon the intelligence and virtue of the people, it shall be the duty of the Legislature to encourage, by all suitable means, the promotion of intellectual, scientific, moral, and agricultural improvement, by establishing *a uniform system* of free public schools, by taxation or otherwise, for all children between the ages of five and twenty-one years, and shall, as soon as practicable, establish schools of higher grades.

MISS. CONST. of 1868, art. VIII § 1 (emphasis added).

Shortly after the 1868 Constitution was ratified, Congress enacted the Mississippi Readmission Act, which premised the state's restored rights on certain "fundamental conditions," including: "That the constitution of

---

[2] Ten states formerly in rebellion were readmitted to Congress pursuant to similar federal laws.

2

Mississippi shall never be so amended or changed as to deprive any citizen or class of citizens of the United States of the school *rights and privileges secured by the constitution of said State.*" 16 Stat. 67, 68 (1870) (emphasis added).³ Since 1868, the quoted state constitutional provision has been amended four times. The current version, adopted in 1987, states: "The Legislature shall, by general law, provide for the establishment, maintenance and support of free public schools upon such conditions and limitations as the Legislature may prescribe." MISS. CONST., art. VIII § 201.

The plaintiffs comprise a group of low-income African-American women whose children attend Mississippi public schools. They allege "that the current version of the Mississippi Constitution violates the 'school rights and privileges' condition of the Mississippi Readmission Act." *Williams v. Reeves*, 954 F.3d 729, 732 (5th Cir. 2020). "They highlight one specific difference between the 1868 and 1987 education clauses: While the 1868 version of the education clause required the Legislature to establish 'a *uniform* system of free public schools,' the 1987 version has no reference to 'uniform[ity],' mandating only that the Legislature provide for the establishment of a system of 'free public schools.'" *Id.* at 733 (emphasis and alteration in original). The plaintiffs contend that the removal of the word "uniform" from Mississippi's Constitution violates the Readmission Act, resulting in *disuniform* schools and a number of injuries, including illiteracy, a diminished likelihood of high school graduation, low rates of college attendance, and an increased likelihood of future poverty.

The named defendants, sued in their official capacities, include Mississippi's Governor, Lieutenant Governor, Speaker of the House, Secretary of State, and the entire State Board of Education. They moved to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). The district

---

³ Identical language appears regarding the readmission of Virginia and Texas, consequently, the same case could be filed in those states if plaintiffs prevail here.

3

court granted the defendants' 12(b)(1) motion, holding that it lacked jurisdiction based on Eleventh Amendment sovereign immunity. On reconsideration, the court dismissed without prejudice.

On appeal, the plaintiffs defended their "request [for] a 'prospective declaratory judgment' that makes two distinct findings: first 'that Section 201 of the Mississippi Constitution is violating the Readmission Act,' and second, 'that the requirements of Article VIII, Section 1 of the Constitution of 1868 remain legally binding on the [d]efendants, their employees, their agents, and their successors.'" *Id.* at 734. The panel affirmed the district court's dismissal concerning the second of plaintiffs' requests because it "seeks a declaration of *state* law and is therefore barred by the Supreme Court's decision in *Pennhurst* . . . ." *Id.* (emphasis in original).

Contrarily, the panel reasoned that the plaintiffs' first request for declaratory relief fits within *Ex parte Young*'s exception to sovereign immunity for cases in which a state officer is charged with acting in violation of federal law. *Id.* at 735–36. Plaintiffs allege that Section 201 of the current Mississippi constitution violates federal law, specifically, the Mississippi Readmission Act's confirmation of "school rights and privileges." That the "school rights and privileges" language depends on the state's 1868 constitution, the panel declared, did not potentially "run afoul of *Pennhurst* because it does not ask the court to compel compliance with 'state law *qua* state law,'" the panel explained. *Id.* at 740 (quoting *Ibarra v. Tex. Emp't Comm'n*, 823 F.2d 873, 877 (5th Cir. 1987)). "Instead, it asks the court to interpret the meaning of a *federal* law—the Mississippi Readmission Act—by reference to a related state law." *Id.* (emphasis in original).

## II. Analysis

### A. State Sovereign Immunity

Respectfully, there is no way to avoid the conclusion that the panel's decision on the first request for declaratory relief requires the federal court to

4

impermissibly adjudicate a question of state law. The first decision the court must make on remand pits the meaning of "a uniform system" of public schools in Mississippi's 1868 constitution against "the establishment, maintenance and support" of public schools enunciated in the state's 1987 constitutional amendment. Only after finding that the provisions conflict and that the newer provision is less protective of plaintiffs' children than the 1868 provision could a court conclude that the "school rights and privileges" referenced in the federal Readmission Act have not been "secured by the constitution" of Mississippi.

The doctrine of *Ex parte Young* constitutes an exception to the states' constitutional immunity whereby a federal court has jurisdiction over a suit against a state officer to enjoin an ongoing violation of federal law, even though the state itself would be immune from suit in federal court. *Pennhurst*, 465 U.S. at 102–03, 104 S. Ct. at 909. In preserving the delicate balance between rights created under the Constitution and the states' Eleventh Amendment and sovereign right not to be hailed into federal court, "we must ensure that the doctrine of sovereign immunity remains meaningful, while also giving recognition to the need to prevent violations of federal law." *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 269, 117 S. Ct. 2028, 2034 (1997). Accordingly, the Supreme Court has carefully limited the application of *Ex parte Young* to circumstances in which injunctive relief is necessary to "give[] life to the Supremacy Clause." *Green v. Mansour*, 474 U.S. 64, 68, 106 S. Ct. 423, 426 (1985). One of the most important limitations is that *Ex parte Young* does not apply where private parties seek relief amounting to a federal court order instructing "state officials on how to conform their conduct to state law." *Pennhurst*, 465 U.S. at 106, 104 S. Ct. at 911. To determine whether the *Ex parte Young* doctrine avoids an immunity bar, federal courts conduct a "straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as

5

prospective." *Verizon Maryland, Inc. v. Public Serv. Comm'n. of Md.*, 535 U.S. 635, 645, 122 S. Ct. 1753, 1760 (2002) (quoting *Coeur d'Alene*, 521 U.S. at 296, 117 U.S. at 2047 (O'Connor, J., concurring)).

As all these decisions indicate, the touchstone for applying *Ex parte Young* is an allegation that *federal law* is being violated. Without the imperative of vindicating federal law, federal courts have no warrant to adjudicate suits against nonconsenting states. What the plaintiffs seek in this case is plainly an interpretation and enforcement of Mississippi law, which is not a declaration cognizable through the *Ex parte Young* exception. The panel mistook what is, in substance, a state law claim as a federal claim interpreting the Readmission Act.

The Readmission Act specifies that the State shall not amend *state* law so as to violate *state* law: ". . . the constitution of Mississippi shall never be so amended or changed as to deprive any citizen or class of citizens . . . of the school rights and privileges secured by the constitution of said State." 16 Stat. 67, 68 (1870). The plaintiffs can only prevail on their purported federal claim if they persuade a court to find that Mississippi violated school rights granted exclusively by its own 1868 Constitution when it amended its Constitution in 1987.

The panel rejected plaintiffs' claim that the Readmission Act incorporated 1868 state constitutional law. *Williams*, 954 F.3d at 740. It stated, correctly, that the Mississippi Readmission Act "does not explicitly incorporate any of the language, requirements, or provisions of the 1868 Constitution. Nor does the Readmission Act require Mississippi to abide indefinitely by the 1868 Constitution's education clause." *Id.* Having recognized these salient facts, it is a mystery how the panel could avoid the conclusion that plaintiffs are not entitled to relief unless a federal court decides an explicitly state law issue: whether Section 201 of Mississippi's 1890 Constitution, as amended in 1987, abrogated rights secured by Mississippi's

1868 Constitution.[4] The plaintiffs' argument proves the point. They contend that Section 201 is invalid because it "no longer contains a uniformity guarantee." But the uniformity guarantee is (or was) a right granted only by state law. The Readmission Act says no more than this, as it references only "the school rights and privileges *secured by the Constitution of said State.*" 16 Stat. 67, 68 (1870). In the absence of the Readmission Act's explicit incorporation of state law or a prohibition on future amendments of the state constitution, the only way for Section 201 to be declared invalid is to say it abrogated the previous state constitutional provision. For a federal court to adjudicate that proposition would violate the sovereignty and federalism principles undergirding the *Pennhurst* decision.

Here, the plaintiffs are not asking the federal court merely to consult or ascertain state law on the way to adjudicating a federal claim, but to (1) interpret two state constitutional provisions, the 1868 uniformity guarantee and Section 201; (2) determine whether they are compatible or in conflict; and then (3) declare whether officers of state government are in

---

[4] Many of these same concerns animate the separate doctrine of *Pullman* abstention. *See Harris County Com'rs Court v. Moore*, 420 U.S. 77, 84 n.8, 95 S. Ct. 870, 876 n.8 (1975) ("[W]here the challenged statute is part of an integrated scheme of related constitutional provisions, statutes, and regulations, and where the scheme as a whole calls for clarifying interpretation by the state courts, we have regularly required the district courts to abstain."); *Reetz v. Bozanich*, 397 U.S. 82, 87, 90 S. Ct. 788, 790 (1970) ("The Pullman doctrine was based on the avoidance of needless friction between federal pronouncements and state policies. The instant case is the classic case in that tradition, for here the nub of the whole controversy may be the state constitution." (internal quotation and citation omitted)); *Railroad Commission of Tex. v. Pullman Co.*, 312 U.S. 496, 499, 61 S. Ct. 643, 645 (1941) ("The last word on the meaning of [a Texas statute], and therefore the last word on the statutory authority of the Railroad Commission in this case, belongs neither to us nor to the district court but to the supreme court of Texas."); *see also* 17A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 4242 (3d ed. 2020) ("Pullman-type abstention is based in large part on considerations of federalism, and the desire to preserve harmonious federal-state relations."); MARTIN A. SCHWARTZ, SECTION 1983 LITIGATION: CLAIMS AND DEFENSES § 14.02 (4th ed. 2020) ("When there is lack of clarity in a state constitutional provision that is unique in the sense that it has no counterpart in the federal Constitution, invocation of *Pullman* abstention may be justified.")

7

violation of the state constitution. That is all the Readmission Act provides, and that adjudication is quintessentially a task for Mississippi's courts.[5]

Further demonstrating the abuse of state sovereign immunity, it is plain that, if successful, plaintiffs' request for a declaratory judgment would surely be followed by a plea for injunctive relief against the state defendants. The only relief compatible with plaintiffs' claim as to the Readmission Act would order the defendants to comply with Article VIII, Section 1 of the 1868 constitution. As the panel understood (regarding plaintiffs' claim for a direct declaration of state law), such an order would run afoul of *Pennhurst*. *Williams*, 954 F.3d at 741. The affront to the state's enforcement of its constitution and management of its educational system is manifest.

What's sauce for the goose is sauce for the gander. The panel's conclusion that *Pennhurst* bars a direct declaration of state law must extend to the declaration of alleged federal law that turns solely and exclusively on a declaration of state law. The Readmission Act required Mississippi to enforce "the school rights and privileges *secured by the Constitution of said State*." 16 Stat. 67, 68 (1870). These "school rights" are rights secured by state law. Any claim resting on an "ongoing violation" is not one of federal law, but of state law. Just as the Supreme Court concluded in *Pennhurst* and the Fourth Circuit in *Bragg*, "a State's sovereign dignity reserves to its own institutions the task of keeping its officers in line with [state] law." *Bragg v. West Virginia Coal Ass'n.*, 248 F.3d 275, 297 (4th Cir. 2001); *see Pennhurst*, 456 U.S. at 106, 104 S. Ct. at 911.

---

[5] In a similar vein, two sister circuits concluded that pursuant to *Pennhurst* and fundamental Federalism principles, lawsuits challenging states' regulation of mining practices that were established under a federal environmental statute did not fall within the *Ex parte Young* exception. *Bragg v. West Va. Coal Ass'n.*, 248 F.3d 275, 298 (4th Cir. 2001); *Pennsylvania Federation Sportsmen's Club v. Hess*, 297 F.3d 310, 330 (3d Cir. 2002). As the *Bragg* court held, where the federal statute did not incorporate state law, and intended to craft a floor for state regulation, "any injunction against State officials to enforce this provision would command them to comport with the State's own law[.]" 248 F.3d at 295–96.

### B. No Readmission Act Implied Right of Action.

Because state sovereign immunity, as interpreted by the Supreme Court, confers immunity from suit, not just liability,[6] this court has the discretion to consider whether the Readmission Act creates a private right of action. *Singleton v. Wulff,* 428 U.S. 106, 121, 96 S. Ct. 2868, 2877 (1976). Consistent with principles of federalism, we should have decided this important and intertwined question of law to avert the state's continued subjection to this litigation. No claim can be brought under *Ex parte Young* unless the Readmission Act can be enforced by private parties. That any such implied cause of action exists is, however, untenable.

The problem here is straightforward: "[P]rivate rights of action to enforce federal law must be created by Congress," *Alexander v. Sandoval,* 532 U.S. 275, 286 121 S. Ct. 1511, 1519 (2001) (citation omitted), and the readmission acts did not create such a right or even impose federal statutory obligations on States. The readmission acts simply offered the states a choice to comply with certain congressional conditions or run the risk that their representatives will not be seated. That much is obvious from the text and structure of the Readmission Act. It was passed "to admit the State of Mississippi to Representation in the Congress of the United States" upon certain conditions. 16 Stat. 67 (1870). The Act explicitly describes "the performance of these several acts" as a "condition precedent to the representation of the State in Congress." *Id.* Later in the Act, it explicitly

---

[6] *Federal Maritime Com'n v. South Carolina State Ports,* 535 U.S. 743, 766 122 S. Ct. 1864, 1877 (2002) ("Sovereign immunity does not merely constitute a defense to monetary liability or even to all types of liability. Rather, it provides an immunity from suit."); *see Alden v. Maine,* 527 U.S. 706, 731, 119 S. Ct. 2240, 2246–47 (1999) ("[A]s the Constitution's structure, its history, and the authoritative interpretations by this Court make clear, the States' immunity from suit is a fundamental aspect of the sovereignty which the States enjoyed before the ratification of the Constitution, and which they retain today . . . ."); *Pennhurst,* 465 U.S. at 100, 104 S. Ct. at 908 ("This Court's decisions thus establish that an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another state." (quotation and citation omitted)).

qualifies Mississippi's admittance "to representation in Congress" upon three "fundamental conditions," one of which is the school rights and privileges condition at issue here.[7] *Id.* at 68. In short, the Readmission Act does not create a private right of action, express or implied. Thus, even assuming *arguendo* that Mississippi's current education clause does not comport with the "fundamental conditions" of the Mississippi Readmission Act, all that can be said is that Mississippi has chosen to run the risk that its representatives may be unseated *by Congress*.

Finding an implied private right of action based on the language of the Readmission Act would depart drastically from decisions of the Supreme Court and this court's recent en banc decision in *Planned Parenthood v. Kauffman*, No. 17-50282, 2020 WL 6867212 (5th Cir. Nov. 23, 2020). The Readmission Act states that as a condition of readmitting the state's representatives to Congress, the "constitution of Mississippi shall never be [] amended" to deprive any citizen or class of citizens of "school rights and privileges secured by the [state's] constitution." 16 Stat. 67, 68 (1870). The Act simply does not confer judicially enforceable personal "rights." Instead, the Act instructs Mississippi as to what it shall not do. The Act's only enforcement mechanism lies in direct recourse to Congress.

As our en banc court recently recognized, where "the text and structure of a statute provide no indication that Congress intends to create new individual rights, there is no basis for a private suit, whether under § 1983 or under an implied right of action." *Kauffman*, 2020 WL 6867212, at *7

---

[7] The other two conditions are that (1) "the constitution of Mississippi shall never be so amended or changed as to deprive any citizen or class of citizens of the United States of the right to vote" except with respect to certain felonies and prospective changes concerning "the time and place of residence of voters," and (2) that "it shall never be lawful for the said State to deprive any citizen of the United States, on account of his race, color, or previous condition of servitude, of the right to hold office under the constitution and laws of said State, or upon any such ground to require of him any other qualifications for office than such as are required of all other citizens." 16 Stat. 67, 68 (1870).

(quoting *Gonzaga University v. Doe*, 536 U.S. 273, 286 (2002)). Furthermore, the Supreme Court has made clear that "to seek redress through § 1983, . . . a plaintiff must assert the violation of a federal *right*, not merely a violation of federal *law*."[8] *Id.* at *17 (quoting *Gonzaga*, 536 U.S. at 282, 122 S. Ct. at 2274) (emphasis and alteration in original). It is not enough for plaintiffs to argue that Mississippi violated the Readmission Act—violation of that federal law does not create a private right to sue.

The Supreme Court has been clear that it will not find an unenumerated right of action unless the text and structure of a statute show an unambiguous intent to create one. *Gonzaga*, 536 U.S. at 283, 122 S. Ct. at 2275 ("We now reject the notion that our cases permit anything short of an unambiguously conferred right to support a cause of action brought under § 1983."); *see Armstrong v. Exceptional Child Center, Inc.*, 575 U.S. 320, 332, 135 S. Ct. 1378, 1387–88 (2015) (plurality op.) (same); *Kauffman*, 2020 WL 6867212, at *7 (same). This should end the analysis. There is nothing in the text, structure, or history [9] of the Readmission Act that suggests any congressional intent to create a private right of action—much less an unambiguous one.

Even if the factors in *Wilder* and *Blessing* are still good law post-*Gonzaga* and *Armstrong*, the result is the same.[10] That test asks whether Congress

---

[8] The plaintiffs brought their claim under § 1983.

[9] There is no doubt that Congress did not intend for the Readmission Act to provide a private right of suit through § 1983 when it was adopted for the obvious reason that the Readmission Act was enacted before Congress adopted § 1983 as part of the Civil Rights Act. *See* Civil Rights Act of 1871, ch. 22, 17 Stat. 13. Originally, § 1983 only provided a remedy for rights secured by the U.S. Constitution. It was not until after the language was amended and the Supreme Court clarified its scope in the mid-to-late 1900s that federal statutes could confer rights enforceable by § 1983. *See Maine v. Thiboutot*, 448 U.S. 1, 4–8, 100 S. Ct. 2504–2506 (1980) (describing the legislative history and confirming that the term "and laws" in § 1983 "means what it says").

[10] The Supreme Court has made clear that at least some aspects of these cases are not good law. As this court recently observed, the Supreme Court in *Armstrong* and *Gonzaga* "repudiate[d]" and "disavowed, in part, its decision in *Wilder*" "that [its] cases permit anything short of an unambiguously conferred right to support a cause of action

11

intended a statutory provision to benefit the plaintiff; whether the "right" is not so vague or amorphous as to strain judicial competence; and whether the provision giving rise to the "right" is mandatory rather than precatory. *Blessing v. Freestone*, 520 U.S. 329, 341–42, 117 S. Ct. 1353, 1359 (1997). Even if we accept that the phrase "school rights and privileges" confers some educational right on these plaintiffs, the latter two inquiries are unavailing for the plaintiffs.

Regarding the second *Blessing* factor, with or without considering "uniformity," the concept of "school rights and privileges" is outside of judicial competence and far beyond what a federal court should be telling states to do. The Readmission Act, for its part, does not provide any guidance on the term "school rights and privileges" or provide objective benchmarks for evaluating such rights. Making such determinations on its own is well beyond the provenance of the federal judiciary. This is especially true considering the Supreme Court's refusal, under the comparatively more precise Equal Protection Clause, to adjudicate school children's rights to "equal funding" of public education. *San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 40–43, 93 S. Ct. 1278, 1300–02 (1973). The Court eloquently explained that judicial restraint was required in the face of challenging issues of fiscal policy with which judges lack familiarity and competence. In addition to fiscal matters, the Court noted, "this case also involves the most persistent and difficult questions of educational policy, another area in which this Court's lack of specialized knowledge and experience counsels against premature interference with the informed judgments made at the state and local levels."

---

brought under § 1983." *Kauffman*, 2020 WL 6867212, at *7–8 (quoting *Gonzaga*, 536 U.S. at 283, 122 S. Ct. at 2275 and *Armstrong*, 535 U.S. at 330, 135 S. Ct. at 1386); *see id.* at *19 (Elrod, J. concurring) (rejecting the argument that *Gonzaga* and *Armstrong* merely clarified one of the *Wilder/Blessing* factors because it "ignores *Armstrong*'s recognition—one made by a majority of the Court, not just a plurality—that *Gonzaga* 'plainly repudiate[d]' *Wilder*" (alterations in original)).

12

*Id.* Since funding is the likely endgame of this litigation, we should be bound by that case to acknowledge the strain on judicial competence were plaintiffs to prevail.

Not only are any "rights" granted by the Readmission Act too vague and amorphous for judicial resolution, but the statute's language is not "mandatory" toward any goal and thus fails the third *Blessing* factor. The Act places conditions on Mississippi that are enforced through congressional action, but in no way does it contemplate granting plaintiffs a right enforceable against the state.[11] And as previously explained, if we view the statute from the perspective of the *Gonzaga/Armstrong* framework, there is little doubt Congress did not "unambiguously" confer judicially enforceable rights on the plaintiffs.

In short, the plaintiffs' case is doomed irrespective of constitutional sovereign immunity because they are not empowered to enforce the Readmission Act. For this additional reason, we may not subject the State to further litigation and travail. The panel decision is an affront to the principles of Federalism embodied in *Pennhurst*. I respectfully dissent from the court's denial of en banc rehearing.

---

[11] We would not be the only court to reach this conclusion with respect to interpreting one of the readmission acts. For example, a panel interpreting the act "admitting Virginia to representation in Congress" reasoned as follows: "It is extremely doubtful, even if Virginia has violated the conditions of this Act . . . whether this presents a question justiciable in the courts. Such a matter is one peculiarly within the domain of Congress itself, since it only purports to set up a condition governing Virginia's right to admission to representation in Congress." *Butler v. Thompson*, 97 F. Supp. 17, 20 (E.D. Va. 1951).

13