**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION**

**DOROTHY HAYMER, on behalf of her minor child D.S., et al.**          **PLAINTIFFS**

**VS.**          **Civil Action No. 3:17-cv-00404-HTW-LGI**

**TATE REEVES, in his official capacity as
Governor of Mississippi, et al.**          **DEFENDANTS**

---

**MEMORANDUM OF AUTHORITIES IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**

---

**INTRODUCTION**

The Court should dismiss Plaintiffs' First Amended Complaint because (1) this case presents a nonjusticiable political question; (2) Plaintiffs lack standing; and (3) there is no private right of action. In the absence of a justiciable dispute and/or standing, this Court does not have subject matter jurisdiction. Even if this Court were to find for some reason that jurisdiction exists, in the absence of a private right of action, Plaintiffs have failed to state a claim.

Plaintiffs seek a declaratory judgment that the education clause, as amended, in Mississippi's Constitution violates the Readmission Act of 1870 (hereinafter "the Readmission Act" or "the Act") readmitting Mississippi's representatives to Congress following the Civil War. The text of the Act places it peculiarly within the exclusive domain of Congress, and there are no judicially discoverable or manageable standards governing "Readmission Act litigation." Nor are present-day federal courts in any position to make policy determinations with regard to Reconstruction legislation imposed upon former Confederate States over 150 years ago. Therefore, this case presents a nonjusticiable political question, and this Court has no jurisdiction.

1

Jurisdiction also fails for lack of standing.  Plaintiffs' action is predicated not on any concrete and particularized injury, but instead on a generalized grievance of alleged disparity in educational quality between public schools that are predominantly black and those that are predominantly white.  Plaintiffs' First Amended Complaint fails to allege any plausible facts tracing this alleged disparity to any amendment of Mississippi's Constitution.  Regardless, any redress of this alleged disparity would require legislative action that is outside the power of Defendants[1] or this Court to effectuate.

Even if this Court were to find for some reason that subject matter jurisdiction exists, the Readmission Act does not create a private right of action—via 42 U.S.C. § 1983 or the Act itself— and Plaintiffs have accordingly failed to state a claim.  The purpose of the Act was to impose conditions on the State of Mississippi for its readmission to Congress, not to confer any new individual rights.  The terms of the Act are too imprecise to be judicially enforceable and are not binding beyond their status as conditions precedent to Mississippi's readmission to Congress.  Accordingly, there is no private right of action under § 1983.  Nor can any private right of action be otherwise "implied" since the Act provides no private remedy.

For these reasons and those set forth herein, this Court lacks subject matter jurisdiction, and Plaintiffs' First Amended Complaint should be dismissed pursuant to FRCP 12(b)(1).

---

[1] "Defendants" is used collectively herein to refer to the following:  Defendant Tate Reeves, in his official capacity as Governor of Mississippi; Defendant Philip Gunn, in his official capacity as Speaker of the Mississippi House of Representatives; Defendant Delbert Hosemann, in his official capacity as Lieutenant Governor of Mississippi; Defendant Michael Watson, in his official capacity as Secretary of State of Mississippi; Defendant Carey Wright, in her official capacities as State Superintendent of Education and Executive Secretary of the Mississippi State Board of Education; Defendant Rosemary Aultman, in her official capacity as Chair of the Mississippi State Board of Education; and Defendants Angela Bass, Ronnie McGehee, Karen Elam, Glen East, Wendi Barrett, Matt Miller, Mary Werner (incorrectly identified in Plaintiffs' First Amended Complaint as "Mary Wener"), and Bill Jacobs, in their official capacities as Members of the Mississippi State Board of Education.  There are no other defendants.

Alternatively, Plaintiffs have failed to state a claim, and this action should be dismissed with prejudice pursuant to FRCP 12(b)(6).

## STATEMENT OF THE CASE

### I.  Nature of Case and Course of Proceedings.

This imaginative yet baseless lawsuit arises out of the efforts of three parents of African-American Mississippi schoolchildren, with the backing of the Southern Poverty Law Center, to have a federal court declare Mississippi's Constitution to be in violation of Reconstruction legislation authorizing Mississippi's readmission to Congress following the War Between the States.   Specifically, Plaintiffs assert that the federal Readmission Act (1870) restoring Mississippi's representatives to Congress somehow went further, to compel Mississippi to maintain in its Constitution—in perpetuity—an express commitment to "uniform[ity]" in the State's provision of free public schools.   According to Plaintiffs, subsequent amendments removing a three-word reference to "uniform[ity]" from Section 201 of Mississippi's Constitution (i.e., the education clause) have resulted in significant disparities in the quality of education provided by schools that are predominantly black, as opposed to those that are predominantly white.  Presumably, Plaintiffs' ultimate objective is to effect a major federal restructuring of public school funding in Mississippi.

Plaintiffs Indigo Williams, Dorothy Haymer, Precious Hughes, and Sarde Graham, all acting on behalf of their respective minor children, filed their original Complaint in this matter on May 23, 2017.  Complaint (Dkt. #1).  On July 24, 2017, Defendants[2] moved to dismiss on multiple grounds, including Eleventh Amendment immunity and all three of the grounds asserted in

---

[2] At the time, the offices of a number of the named defendants, all sued in their official capacities, were occupied by different individuals than they are presently.  While some of the named defendants have since changed, the offices sued remain the same.

Defendants' instant motion.  Defendants' Motion to Dismiss (Dkt. #23); Supporting Memorandum of Authorities (Dkt. #24).

On March 28, 2018, this Court (Hon. William H. Barbour, Jr., presiding) entered its Opinion and Order and its Final Judgment dismissing Plaintiffs' Complaint with prejudice on the grounds that Defendants were immune from suit under the Eleventh Amendment.  The Court did not reach any of the three alternative grounds for dismissal asserted in Defendants' motion to dismiss.  *See* Opinion and Order (Dkt. #31); Final Judgment (Dkt. #32).  On January 4, 2019, this Court (Judge Barbour presiding) granted in part and denied in part a motion by Plaintiffs to alter or amend the judgment, thereafter entering a separate Opinion and Order and an Amended Final Judgment reaffirming its ruling but modifying the dismissal of Plaintiffs' Complaint to be "without prejudice."  Opinion and Order (Dkt. #39); Amended Final Judgment (Dkt. #40).

On appeal by Plaintiffs, a three-judge panel of the Fifth Circuit declined to consider any of the three alternative grounds for dismissal presented in Defendants' motion to dismiss, and instead mirrored this Court in confining its analysis to the Eleventh Amendment issue.  *Williams on Behalf of J.E. v. Reeves*, 954 F.3d 729, 735 (5th Cir. 2020).  For reasons not germane to Defendants' instant motion, the Fifth Circuit panel affirmed in part and vacated in part, allowing this case to proceed with respect to Plaintiffs' request for a declaratory judgment to the effect that Section 201 of Mississippi's Constitution violates the Readmission Act.  *Id.* at 739, 741.  The Fifth Circuit remanded so that this Court "may reach [the three remaining grounds asserted by Defendants for dismissal] in the first instance."  *Id.* at 735.

Defendants subsequently petitioned for rehearing en banc.  On December 7, 2020, the Fifth Circuit denied Defendants' petition.  *Williams on behalf of J.E. v. Reeves*, 981 F.3d 437 (5th Cir. 2020).  Eight judges voted for rehearing and nine voted against, with Judge Jones authoring an

eight-judge dissent. *See id.* Defendants moved to stay the mandate pending the filing and disposition of a petition for writ of certiorari. The Fifth Circuit denied Defendants' motion and issued its mandate on January 6, 2021. Defendants thereafter filed an application with the U.S. Supreme Court to recall and stay the mandate pending the filing and disposition of a cert petition. On April 8, 2021, the Supreme Court issued an order denying Defendants' application "without prejudice to a renewed application after the remaining grounds for dismissal currently on remand to the district court have been fully resolved." *See* U.S. Supreme Court Order (Dkt. #55).

Following a status conference with counsel for the parties on July 7, 2021, this Court (Hon. Henry T. Wingate presiding) entered a scheduling order directing Plaintiffs to file an amended complaint no later than July 17, 2021. *See* Order (Dkt. #64). The order further directed Defendants to file their responsive pleading(s) and dispositive motions and briefs, if any, no later than September 15, 2021. *Id.* On July 19, 2021, Plaintiffs Dorothy Haymer, Precious Hughes, and Sarde Graham,[3] acting on behalf of their respective minor children, filed their First Amended Complaint seeking "a purely prospective declaratory judgment that Section 201 of the Mississippi Constitution is in violation of the Readmission Act." First Amended Complaint at 37, ¶ 6.10 (Dkt. #65). For the reasons set forth herein, Defendants timely file the instant motion to dismiss.

**II. Statement of Facts.**

Enacted by Congress on February 23, 1870, the Readmission Act states the following, in pertinent part:

> CHAP. XIX – *An Act to admit the State of Mississippi to Representation in the Congress of the United States.*
>
> WHEREAS the people of Mississippi have framed and adopted a constitution of State government which is republican; and whereas the legislature of Mississippi elected under said constitution has ratified the fourteenth and fifteenth amendments to the

---

[3] Indigo Williams, a named plaintiff in the original Complaint, does not appear as a plaintiff in the First Amended Complaint. *See* First Amended Complaint at 1 (Dkt. #65).

Constitution of the United States; and whereas the performance of these several acts in good faith is a condition precedent to the representation of the State in Congress:  therefore,

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled*, That the said State of Mississippi is entitled to representation in the Congress of the United States: *Provided*, That . . . .

. . . .

*And provided further*, That the State of Mississippi is admitted to representation in Congress as one of the States of the Union, upon the following fundamental conditions:

First, That the constitution of Mississippi shall never be so amended or changed as to deprive any citizen or class of citizens of the United States of the right to vote who are entitled to vote by the constitution herein recognized . . . .

Second, That it shall never be lawful for the said State to deprive any citizen of the United States, on account of his race, color, or previous condition of servitude, of the right to hold office under the constitution and laws of said State . . . .

Third, That the constitution of Mississippi shall never be so amended or changed as to deprive any citizen or class of citizens of the United States of the school rights and privileges secured by the constitution of said State.

16 Stat. 67 (1870) (italics and small caps in original).  *See* First Amended Complaint at 15, ¶ 5.9.

At the time the Readmission Act was enacted, the then-current Mississippi Constitution of 1868 contained the following education clause:

As the stability of a republican form of government depends mainly upon the intelligence and virtue of the people, it shall be the duty of the Legislature to encourage, by all suitable means, the promotion of intellectual, scientific, moral, and agricultural improvement, by establishing a uniform system of free public schools, by taxation or otherwise, for all children between the ages of five and twenty-one years, and shall, as soon as practicable, establish schools of higher grade.

Miss. Const. of 1868 art. VIII, § 1.  *See* First Amended Complaint at 5, ¶ 2.6 (Dkt. #65).

The aforementioned education clause was subsequently amended in 1890, 1934, 1960, and most recently in 1987.  *See* First Amended Complaint at 15-24 (Dkt. #65).  The words "a uniform

system" were removed in the 1960 amendment.  *See id.* at 21, ¶¶ 5.35-5.36.  In its current form, the education clause states the following:

> The Legislature shall, by general law, provide for the establishment, maintenance and support of free public schools upon such conditions and limitations as the Legislature may prescribe.

MISS. CONST. art. VIII, § 201.  *See* First Amended Complaint at 22, ¶ 5.39 (Dkt. #65).

Plaintiffs allege that as a result of amendment of the education clause to remove the "unform[ity]" phrase reflected in 1868 version, "[b]lack students in [Mississippi] are not receiving an education equal to that received by white students."  First Amended Complaint at 2, ¶ 1.1 (Dkt. #65).  Rather, Plaintiffs allege that "African American children in Mississippi are receiving an education far inferior to white children," and that students at predominantly black schools "suffer far worse conditions and outcomes than students at schools that are predominantly white."  *See id.* at 7, ¶ 2.14; 24, ¶ 5.46.

Plaintiffs assert that Mississippi's amendments to the 1868 version of the education clause—principally the removal of the "uniform[ity]" phrase in 1960—constitute a violation of the Readmission Act.  *See id.* at 33-37.  Citing "Section 1983, the Readmission Act, and the Declaratory Judgment Act," Plaintiffs seek a "prospective declaratory judgment finding that Section 201 of the Mississippi Constitution is violating the Readmission Act."  *Id.* at 33, ¶ 6.3; 37, ¶ 7.1(a).

Because Plaintiffs have no justiciable dispute, no standing, and no private right of action, Defendants file the instant motion to dismiss Plaintiffs' First Amended Complaint pursuant to FRCP 12(b)(1) and/or 12(b)(6).

## STANDARD FOR DISMISSAL

A motion to dismiss on the grounds that the action presents a nonjusticiable political question is a motion to dismiss for lack of subject matter jurisdiction brought pursuant to FRCP 12(b)(1).  *Spectrum Stores, Inc. v. Citgo Petroleum Corp.*, 632 F.3d 938, 948-49 (5th Cir. 2011).  Motions to dismiss for lack of Constitutional standing are likewise jurisdictional and are also brought pursuant to FRCP 12(b)(1).  *Moore v. Bryant*, 853 F.3d 245, 248 n.2 (5th Cir. 2017).  A motion to dismiss on the grounds that there is no private right of action is properly brought pursuant to FRCP 12(b)(6).  *Morales-Garza v. Lorenzo-Giguere*, 277 Fed. Appx. 444, 446 (5th Cir. 2008), *cert. denied*, 555 U.S. 971 (2008) (affirming dismissal predicated on FRCP 12(b)(6) as opposed to FRCP 12(b)(1),  the former being preferred as proper rule governing dismissals predicated on lack of private right of action).[4]

## ARGUMENT

## I. PLAINTIFFS' FIRST AMENDED COMPLAINT SHOULD BE DISMISSED BECAUSE THIS CASE PRESENTS A NONJUSTICIABLE POLITICAL QUESTION.

The nonjusticiability of a political question is "primarily a function of the separation of powers."  *Baker v. Carr*, 369 U.S. 186, 210 (1962).  It is "the relationship between the judiciary and the coordinate branches of the Federal Government, and not the federal judiciary's relationship to the States," which generates the "political question."  *Id.*  The doctrine is "designed to restrain

---

[4] *But see Acara v. Banks*, 470 F.3d 569, 570, 572 (5th Cir. 2006) (equating lack of private right of action to lack of federal subject matter jurisdiction, and accordingly affirming dismissal pursuant to FRCP 12(b)(1) *or* 12(b)(6)).  Based on the Fifth Circuit's holding in *Morales-Garza*, 277 Fed. Appx. at 446, see *supra*, and the weight of persuasive authority, *Acara* appears to be anomalous, and dismissals for lack of a private right of action should be predicated on FRCP 12(b)(6) for failure to state a claim.  *See Fair v. Verizon Commc'ns Inc.*, 621 Fed. Appx. 52, 53 (2d Cir. 2015); *Gage v. Wells Fargo Bank, N.A., AS*, 555 Fed. Appx. 148, 151 (3d Cir. 2014); *Spicer v. Chicago Bd. of Options Exchange, Inc.*, 977 F.2d 255, 257 (7th Cir. 1992); *Adams v. Eureka Fire Prot. Dist.*, 352 Fed. Appx. 137, 139 (8th Cir. 2009); *Caldwell v. U.S. Dep't of Transp.*, 847 Fed. Appx. 677, 679, 680 (11th Cir. 2021).

the Judiciary from inappropriate interference in the business of the other branches of Government." *United States v. Munoz-Flores*, 495 U.S. 385, 394 (1990).

The Supreme Court has articulated six "independent tests" for the existence of a political question, as follows:  (1) a textually demonstrable constitutional commitment of the issue to a coordinate political department; (2) a lack of judicially discoverable and manageable standards for resolving it; (3) the impossibility of deciding without an initial policy determination of a kind clearly for nonjudicial discretion; (4) the impossibility of a court's undertaking independent resolution without expressing lack of the respect due coordinate branches of government; (5) an unusual need for unquestioning adherence to a political decision already made; and (6) the potentiality of embarrassment from multifarious pronouncements by various departments on one question.  *Vieth v. Jubelirer*, 541 U.S. 267, 277-78 (2004) (citing *Baker*, 369 U.S. at 217).

The Supreme Court has noted that the six tests itemized *supra* "are probably listed in descending order of both importance and certainty."  *Vieth*, 541 U.S. at 278.  Of the six, the first two have been applied as the most significant.  *See, e.g., Zivotofsky v. Clinton*, 566 U.S. 189, 195 (2012); *Nixon v. United States*, 506 U.S. 224, 228-29 (1993).

The case at bar presents a nonjusticiable political question because (1) the text of the Readmission Act places it peculiarly within the exclusive domain of Congress; (2) there are no judicially discoverable and manageable standards governing "Readmission Act litigation"; and (3) the present-day federal judiciary is not in a position to make policy determinations with regard to Reconstruction legislation imposed upon former Confederate States over 150 years ago.

A.  **The text of the Readmission Act places it peculiarly within the exclusive domain of Congress.**

As set forth in detail in Part III.A., *infra*, the Readmission Act expressly articulates as its sole purpose the "admi[ssion] [of] the State of Mississippi to Representation in the Congress of the

United States." 16 Stat. 67 (1870). The Act focuses exclusively on the conditions imposed upon Mississippi for readmission of its representatives to Congress. There being nothing in the text and structure of the Act that unambiguously confers a private right of action on anyone, see Part III, *infra*, "[t]he Act's only enforcement mechanism lies in direct recourse to Congress." *Williams on behalf of J.E. v. Reeves*, 981 F.3d 437, 444 (5th Cir. 2020) (Jones, J., dissenting).

In what is believed to be the only other reported federal case addressing a private plaintiff's effort to enforce provisions of a Reconstruction-era readmission act against a former Confederate State, the U.S. District Court for the Eastern District of Virginia found it "extremely doubtful" that a case of this nature presents a justiciable dispute. *See Butler v. Thompson*, 97 F. Supp. 17, 20 (E.D. Va. 1951), *aff'd*, 341 U.S. 937 (1951). In rejecting the plaintiff's efforts to enforce an alleged violation of Virginia's comparable readmission act, a three-judge panel held that

> [s]uch a matter is one **peculiarly within the domain of Congress itself**, since it only purports to set up a condition governing Virginia's right to admission to representation in Congress.

*Id.* at 20 (emphasis added). *See also Merritt v. Jones*, 533 S.W.2d 497, 502 (Ark. 1976) (holding that if Arkansas' comparable readmission act still (or ever) had any force or effect at all, "its enforcement is in the exclusive domain of Congress"). Like the readmission act claims sought to be asserted in *Butler* and *Merritt*, Plaintiffs' claims implicate matters committed to the exclusive domain of Congress, a coordinate branch of government. Thus, where the issue has arisen previously, claims predicated on alleged violations of Reconstruction-era readmission acts were barred as nonjusticiable political questions.

This outcome is buttressed by the Constitutional significance of such claims. Part and parcel with Reconstruction-era legislation readmitting former Confederate States to Congress was the underlying condition that each State first adopt a constitution providing for a "republican form

of government" consistent with Article IV, Section 4, of the U.S. Constitution ("the Guarantee Clause"). *See Texas v. White*, 74 U.S. 700, 729 (1868). *See also State v. Williams*, 49 Miss. 640, 662 (Miss. 1873); 16 Stat. 67 (1870) ("WHEREAS the people of Mississippi have framed and adopted a constitution of State government which is republican . . . ."). Claims predicated on a given State's alleged failure to adhere to a state constitutional provision supporting readmission may accordingly be viewed as analogous to claims asserting a violation of the Guarantee Clause. *Cf. Pac. States Tel. & Tel. Co. v. Oregon*, 223 U.S. 118, 139-51 (1912) (holding that claim that provision of Oregon constitution violated provisions of act of Congress admitting Oregon to Union was a claim asserting violation of Guarantee Clause). As a matter of law, such claims constitute nonjusticiable political questions requiring dismissal. *See id.* at 151. *See also Perschall v. Louisiana*, 174 F.3d 197, *3 n.4 (5th Cir. 1999) (reaffirming that claim asserting violation of Guarantee Clause "is a political question and therefore nonjusticiable"); *Cochran v. La. State Bd. of Educ.*, 281 U.S. 370, 374 (1930) (same). The same result should obtain here.

The Readmission Act does nothing more than set out congressionally-imposed conditions precedent to Mississippi's readmission to Congress. Any dispute regarding Mississippi's performance of those conditions is committed to the exclusive domain of Congress, a separate and co-equal branch of government. Accordingly, the instant action presents a nonjusticiable political question pursuant to the first factor delineated in *Baker*, *supra*.

**B.** **There are no judicially discoverable and manageable standards governing "Readmission Act litigation."**

In considering this second factor articulated in *Baker*, the Supreme Court has noted that

> [o]ne of the most obvious limitations imposed [upon courts] is that **judicial action must be governed by *standard*, by *rule***. Laws promulgated by the Legislative Branch can be inconsistent, illogical, and ad hoc; law pronounced by the courts must be **principled, rational, and based upon reasoned distinctions**.

*Vieth*, 541 U.S. at 278 (italics in original; boldface underscore added).

Plaintiffs seek a declaratory judgment "that Section 201 of the Mississippi Constitution is in violation of the Readmission Act."  First Amended Complaint at 37, ¶ 6.10 (Dkt. #65).  In so doing, Plaintiffs necessarily ask this Court to somehow determine—in the absence of any extant judicial standards—all of the following:  (1) the nature, scope, and status of all matters within the ambit of "school rights and privileges" assured by Mississippi's Constitution of 1868 as of 1870; (2) the current state of affairs in Mississippi with respect to any and all criteria determined to be implicated by the Act's "school rights and privileges" clause; and (3) whether and to what extent any inequalities in educational opportunities today exist and are causally related to the removal of a "uniform[ity]" provision from Section 201 of the State Constitution as opposed to other, unrelated reasons.[5]

Multiple questions emerge.  Chief among them, what standards is this Court expected to employ in making the aforementioned determinations?  Does any singular education clause provide objectively greater "school rights and privileges" such that this Court can adjudicate it as a federal standard?  Is a uniformity clause better than an efficiency clause, or a clause that calls for free public schools?  Are the federal courts then going to interpret the selected wording of Mississippi's Constitution in subsequent litigation?  What, then, is the endgame?[6]

As Judge Jones recognized in her dissent in this matter previously,

. . . the concept of "school rights and privileges" is outside of judicial competence and far beyond what a federal court should be telling states to do.  **The Readmission Act, for its part, does not provide any guidance on the term**

---

[5] *See San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 24 (1973) (acknowledging "the infinite variables affecting the educational process" and associated difficulty in achieving parity in educational quality).

[6] *See Reeves*, 981 F.3d at 439, 446 (Jones, J., dissenting) (noting that "funding is the likely endgame of this litigation," and that "the sought-for judgment . . . would pave the way for federal court orders to effect a major restructuring of state school funding").

**"school rights and privileges" or provide objective benchmarks for evaluating
such rights.** Making such determinations on its own is **well beyond the
provenance of the federal judiciary**.

*Reeves*, 981 F.3d at 445 (Jones, J., dissenting) (emphasis added). *See also San Antonio Indep. Sch.

Dist. v. Rodriguez*, 411 U.S. 1, 42 (1973) (recognizing persistent difficulty involved in "questions

of educational policy" given courts' "lack of specialized knowledge and experience" in this arena).

In over 150 years, no court has produced even a hint of what standards would govern

"Readmission Act litigation." And "[w]hen a court is given no standard by which to adjudicate a

dispute, . . . resolution of the suit is beyond the judicial role envisioned by Article III." *Zivotofsky*,

566 U.S. at 204 (Sotomayor, J., concurring). There being no judicially cognizable standards to

govern this Court's evaluation of any alleged violation of the Readmission Act, this case presents

a nonjusticiable political question pursuant to the second factor delineated in *Baker*, *supra*.

**C.  The present-day federal judiciary is not in a position to make policy determinations
with regard to Reconstruction legislation imposed upon former Confederate States
over 150 years ago.**

Plaintiffs' claims are predicated on unprecedented congressional action undertaken in

relation to former Confederate States in the wake of the Civil War, in what can only be described

as the most exceptional of circumstances. Inescapably, the Readmission Act "must be studied

against the background of the Tragic Era of which it was a part." *See Butler*, 97 F. Supp. at 20. It

is an understatement to say that much has transpired in the intervening century and a half. The

overarching considerations of 1870 no longer obtain, and the 50 States now "stand upon equal

footing." *See id.* at 21. It stands to reason that the conditions imposed by the Act have, at a

minimum, been waived by Congress given Mississippi's continued admission to representation in

that body in every year since readmission. *See id.* at 20. Indeed, it is questionable whether the

Readmission Act any longer has any force or effect *at all*. *See Merritt*, 533 S.W.2d at 502.

13

In view of these considerations, Plaintiffs' requested relief would place this Court in the impossible position of reviving issues conspicuously committed to the sphere of congressional history. Present-day federal courts are simply not equipped to make policy determinations regarding Reconstruction legislation imposed upon former Confederate States in connection with the readmission of those States to Congress. The remaining *Baker* factors accordingly place this case squarely within the bounds of a nonjusticiable political question.

By its terms, the Readmission Act is committed to the exclusive domain of Congress. Given that fact, the lack of any judicially discoverable or manageable standards governing "Readmission Act litigation," and the impossibility of making judicial policy determinations with respect to antiquated legislative enactments peculiar to Reconstruction, this case presents a nonjusticiable political question. On this basis standing alone, the Court lacks subject matter jurisdiction, and Plaintiffs' First Amended Complaint should be dismissed.

## II. PLAINTIFFS' FIRST AMENDED COMPLAINT SHOULD BE DISMISSED BECAUSE PLAINTIFFS LACK STANDING.

Federal courts are not "publicly funded forums for the ventilation of public grievances." *See Valley Forge Christian College v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 473 (1982). Lest federal courts devolve "into judicial versions of college debating forums," Article III of the U.S. Constitution requires an actual case or controversy as a necessary predicate to subject matter jurisdiction—that is, the plaintiff must have standing. *See id.* It is well settled that for standing to exist, the plaintiff must show three things: (1) an injury in fact; (2) a traceable causal connection; and (3) redressability. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). In the absence of *any one* of these elements, the plaintiff lacks Article III standing, and the action must be dismissed. *See Okpalobi v. Foster*, 244 F.3d 405, 425 (5th Cir. 2001).

In the case at bar, Plaintiffs' First Amended Complaint should be dismissed because Plaintiffs cannot establish <u>any</u> of the three requisite elements of constitutional standing.

A. **Plaintiffs' action is predicated on the claim that African-American students in Mississippi are receiving an education inferior to that received by white students, a generalized grievance that is insufficient to confer standing.**

To establish the first required element of standing, the plaintiff must show an injury in fact that is both (1) "concrete and particularized"; and (2) "actual or imminent," as opposed to being merely "'conjectural' or 'hypothetical.'" *Lujan*, 504 U.S. at 560. It is well settled that a "generalized grievance" is ordinarily insufficient to confer standing. *See United States v. Hays*, 515 U.S. 737, 743 (1995). That is, when the alleged harm is merely a "generalized grievance" that is "shared in substantially equal measure by all or a large class of citizens," such harm will ordinarily be insufficient to invoke federal judicial power, and thus the plaintiff has no standing to sue over it. *See Warth v. Seldin*, 422 U.S. 490, 499 (1975).

In the case at bar, Plaintiffs allege a generalized grievance as opposed to a concrete and particularized injury; therefore, they cannot establish the requisite injury in fact. Plaintiffs' principal allegation of injury is confined to the general assertion that "[b]lack students in [Mississippi] are not receiving an education equal to that received by white students." First Amended Complaint at 2, ¶ 1.1 (Dkt. #65). Plaintiffs claim generally that allegedly due to alleged inequalities in Mississippi's public schools, African-American students in Mississippi are forced to contend with such negative circumstances as run-down and overcrowded school facilities, high illiteracy rates, low graduation rates, diminished college opportunities, reduced lifetime earnings potential, elevated poverty rates, increased risk of adverse health consequences, increased likelihood of incarceration, and diminished life expectancy. *See id.* at 26, ¶ 5.51; 27-28, ¶ 5.55; 28, ¶ 5.58; 35-37, ¶ 6.9.

Based on the foregoing, Plaintiffs assert that "African American children in Mississippi are receiving an education far inferior to white children," and that students at predominantly black schools "suffer far worse conditions and outcomes than students at schools that are predominantly white."  *See id.* at 7, ¶ 2.14; 24, ¶ 5.46.  Taking Plaintiffs' allegations at face value, their asserted grievance is neither "concrete" nor "particularized."  *See Lujan*, 504 U.S. at 560.  Rather, Plaintiffs' entire lawsuit is formulated as a broad, general indictment of Mississippi's public school system along racial lines.  Because Plaintiffs' claims are predicated on a generalized grievance that is "shared in substantially equal measure by all" black students in Mississippi, see *Warth*, 422 U.S. at 499, Plaintiffs cannot establish an injury in fact and accordingly lack standing.

**B.  Plaintiffs' First Amended Complaint fails to allege any plausible factual predicate tracing any alleged injury to the removal of a "uniform[ity]" provision from Section 201 of the Mississippi Constitution.**

To establish the second required element of standing, the plaintiff must show "a causal connection between the injury and the conduct complained of" in the plaintiff's complaint.  *Lujan*, 504 U.S. at 560.  The injury must be "fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court."  *Id.* (alterations and omissions in original).  Where, on the face of the plaintiff's complaint, the court can discern that the alleged harm could just as conceivably have resulted from "any number of factors" other than those attributable to the conduct of the defendant, the plaintiff cannot establish the requisite element of causation/traceability.  *See, e.g., Moore v. Bryant*, 205 F. Supp. 3d 834, 855 (S.D. Miss. 2016), *aff'd*, 853 F.3d 245 (5th Cir. 2017).

In the case at bar, Plaintiffs have failed to allege facts fairly tracing any alleged injury to the complained-of conduct; therefore, they cannot establish the requisite causal connection.  Plaintiffs assert that a host of alleged injuries suffered by African-American students generally in

Mississippi, *see* Part II.A., *supra*, is traceable to the removal—in 1960—of the words "a uniform system" preceding the phrase "of free public schools" in Section 201 of the Mississippi Constitution.  While this conclusory allegation is the linchpin on which Plaintiffs' lawsuit turns, nowhere in their First Amended Complaint do Plaintiffs present any plausible factual allegations explaining *how* such expansive alleged harm is fairly traceable to the omission—over 60 years ago—of three words from a State constitutional provision.

The Supreme Court has acknowledged "the infinite variables affecting the educational process."  *See Rodriguez*, 411 U.S. at 24.  As noted *supra*, Plaintiffs blame everything from incarceration rates to diminished life expectancy on the removal of a "uniform[ity]" provision from Section 201 of the Mississippi Constitution, when in fact all of Plaintiffs' alleged "injuries" are just as conceivably attributable to "any number of factors" unrelated to educational quality (e.g., socioeconomic factors, lack of parental involvement, preexisting health conditions, etc.).  *See Moore*, 205 F. Supp. 3d at 855.  Having failed to allege any plausible factual predicate causally tracing any alleged injury to the complained-of conduct, Plaintiffs cannot establish standing.

### C.  <u>Plaintiffs' alleged injury is not redressable.</u>

To establish the third required element of standing, the plaintiff must show that it is "'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" *Lujan*, 504 U.S. at 561.  The requested relief must be considered "in the context of the injury that it purports to redress." *I.L. v. Alabama*, 739 F.3d 1273, 1281 (11th Cir. 2014).  Where further legislation will be necessary to afford relief—relegating a court's judgment to "nothing more than a mere 'moral' victory"—that contingency makes redressability speculative, thereby undermining standing. *See id.* at 1280-81.  The Supreme Court has generally declined to endorse

standing theories that require "speculation" or "guesswork as to how independent decisionmakers will exercise their judgment."  *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 413 (2013).

In the case at bar, Plaintiffs cannot show that it is likely—as opposed to speculative—that the alleged injury will or can be redressed by a favorable decision.  Therefore, Plaintiffs cannot establish the requisite element of redressability.  First of all, there is no basis to conclude that the requested declaratory judgment—if granted—would itself effectuate anything beyond a "mere moral victory."  *See Alabama*, 739 F.3d at 1281.  A declaratory judgment in this context would only serve to adjudicate the issue of whether, as Plaintiffs allege, Section 201 of Mississippi's Constitution in fact violates the Readmission Act.  It would not compel Defendants or anyone else to do anything whatsoever in response to that finding.

Secondly, even if Plaintiffs were to succeed in overturning *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89 (1984), and were ultimately able to obtain an injunction requiring Defendants to comply with state law as it existed in 1868, it is a certainty that such an injunction would not redress the type of systemic racial inequalities that Plaintiffs allege presently exist in Mississippi's public school system.  Assuming for the sake of argument that Plaintiffs' allegations are true, which Defendants deny, Defendants have no power to effectuate the relief Plaintiffs seek.  Rather, such power rests exclusively with the Mississippi Legislature and the State's registered voters.

At present, the Mississippi Constitution may only be amended by proposal of the Mississippi Legislature, followed by a vote of the State's qualified electors, of which a majority must approve.  *See* MISS. CONST. art. XV, § 273(1),(2).[7]  Moreover, educational policy and funding

---

[7] The Mississippi Constitution provides two vehicles for amendment:  (1) amendments proposed by the Legislature, to be voted upon by the qualified electors of the State, of which a majority must approve; and (2) amendments by a ballot-initiative process.  *See* MISS. CONST. art. XV, § 273.  *See also Initiative Measure No. 65:  Mayor Butler v. Watson*, No. 2020-IA-01199-SCT, 2021 WL 1940821, at *1 (Miss. May

"are matters reserved for the legislative processes of the various States . . . ." *See Rodriguez*, 411 U.S. at 58-59.  Thus, only the Mississippi Legislature is empowered to redress the generalized grievance asserted in Plaintiffs' First Amended Complaint.  Defendants cannot compel individual Legislators to vote a given way on any given issue.  Because Defendants "have no powers to redress the injuries alleged, the plaintiffs have no case or controversy with these defendants that will permit them to maintain this action in federal court." *See Okpalobi*, 244 F.3d at 427.

Relatedly, the necessity of legislation itself makes redressability speculative, further undermining Plaintiffs' standing.  Unless this Court were to assume unilateral responsibility for restructuring every facet of educational funding in Mississippi at every level of State and local involvement—a colossal undertaking as unworkable as it would be improper—this Court will, at some point, be constrained to rely on future decisions of both the Mississippi Legislature and the multiplicity of county and municipal school boards scattered throughout Mississippi's 82 counties.  Such inevitable "guesswork as to how independent decisionmakers will exercise their judgment" further underscores the speculative nature of any relief that could possibly be crafted by any court in this context. *See Clapper*, 568 U.S. at 413.

Any decision favoring Plaintiffs is speculative and unlikely to redress Plaintiffs' alleged injury; therefore, Plaintiffs cannot establish the requisite redressability to support standing.  In the absence of standing, this Court lacks jurisdiction, and Plaintiffs' First Amended Complaint should be dismissed for this additional reason.

---

14, 2021).  Earlier this year, the Mississippi Supreme Court held that absent amendment to accommodate a reduction in the number of Mississippi's congressional districts, the ballot-initiative process "no longer functions." *See Initiative Measure No. 65*, 2021 WL 1940821 at *2.  Accordingly, at present, Mississippi's Constitution may only be amended via a proposal by the Legislature, followed by a vote of the State's qualified electors.

## III. PLAINTIFFS' FIRST AMENDED COMPLAINT SHOULD BE DISMISSED BECAUSE THE READMISSION ACT DOES NOT CREATE A PRIVATE RIGHT OF ACTION.

It is well settled that "private rights of action to enforce federal law must be created by Congress." *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001).  Where a given statute does not display an intent to create a private right, "a cause of action does not exist and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute." *See id.* at 286-87.  Stated differently, "[i]f the statute does not itself so provide, a private cause of action will not be created through judicial mandate." *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1856 (2017).  *See also Stokes v. Sw. Airlines*, 887 F.3d 199, 201 (5th Cir. 2018) (same).

The governing standard in the private-right-of-action context was articulated by the Supreme Court in *Gonzaga Univ. v. Doe*, 536 U.S. 273 (2002).  *Gonzaga* provides that regardless of whether a plaintiff seeks to enforce an alleged statutory violation via 42 U.S.C. § 1983 or via a private right of action purportedly "implied" by the statute itself, the threshold inquiry is the same: **does the statute unambiguously confer new individual, federal *rights*—not merely *benefits*— on a particular class of persons?**  *Gonzaga Univ. v. Doe*, 536 U.S. 273, 283-85 (2002).  *See also Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 332 (2015) (reaffirming that "a private right of action under federal law is not created by mere implication, but must be 'unambiguously conferred'" (quoting *Gonzaga*)).  Where the terms of the statute "grant[] no private rights to any identifiable class," the question posed above must be "definitively answered in the negative." *Gonzaga*, 536 U.S. at 283-84.  *See also City of Rancho Palos Verdes, Cal. v. Abrams*, 544 U.S. 113, 120 (2005) (reaffirming that "plaintiff must demonstrate that the federal statute creates an individually enforceable right in the class of beneficiaries to which he belongs").

In either context—*viz.*, § 1983 or "implied" right of action—a statute will <u>not</u> be found to create a private right of action <u>unless</u> it is both "phrased in . . . explicit rights-creating terms" <u>and</u> "phrased in terms of the persons benefitted." *See Gonzaga*, 536 U.S. at 284.  In the words of the Supreme Court,

> . . . where the **<u>text and structure</u>** of a statute provide no indication that Congress intends to create **<u>new individual rights</u>**, there is no basis for a private suit, **<u>whether under § 1983 or under an implied right of action.</u>**

*Id.* at 286 (emphasis added).  It is "logical . . . to assume that Congress will be explicit if it intends to create a private cause of action." *Ziglar*, 137 S. Ct. at 1856.  In examining the intent of a given statute, courts "must not be guided by a single sentence or member of a sentence, but [must] look to the provisions of the whole law, and to its object and policy." *Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1, 18 (1981).

*Gonzaga* reiterates that to seek redress through § 1983, "a plaintiff must assert the violation of a federal *right*, not merely a violation of federal *law*." *Gonzaga*, 536 U.S. at 282 (italics in original).  *Gonzaga* likewise confirms that where a plaintiff asserts an "implied" right of action claim predicated on the statute itself as opposed to § 1983, he has the additional burden of showing that the statute "manifests an intent 'to create not just a private *right* but also a private *remedy*.'" *Id.* at 284 (quoting *Alexander*, 532 U.S. at 286) (italics in original).

As recently as November 2020, the Fifth Circuit reaffirmed *Gonzaga* and applied its precepts to preclude certain Medicaid beneficiaries from pursuing a § 1983 action arising out of the alleged violation of a Medicaid statute, where "[n]either the text nor the structure" of the statute was indicative of a congressional intent to create individual rights.  *See Planned Parenthood of Greater Tex. Family Planning & Preventative Health Servs., Inc. v. Kauffman*, 981 F.3d 347, 353-54, 359-60 (5th Cir. 2020).  In so doing, the Fifth Circuit recognized *Gonzaga* as "[t]he Supreme

Court's seminal decision" in the private-right-of-action arena.  *Id.* at 354.  *See also Thurman v. Med. Transp. Mgmt., Inc.*, 982 F.3d 953, 956-59 (5th Cir. 2020) (further reaffirming *Gonzaga* in December 2020).

Prior to *Gonzaga*, the Supreme Court analyzed private-right-of-action claims using a three-part test that required a plaintiff to demonstrate the following:  (1) that Congress intended that the provision in question benefit the plaintiff; (2) that the right assertedly protected by the statute is not so "vague and ambiguous" that its enforcement would strain judicial competence; and (3) that the asserted right is couched in mandatory, rather than precatory, terms that unambiguously impose a binding obligation on the state.  *See Blessing v. Freestone*, 520 U.S. 329, 340-41 (1997).  *See also Wilder v. Va. Hosp. Ass'n*, 496 U.S. 498, 509-12 (1990).  The *Gonzaga* standard, reaffirmed by *Armstrong*, has supplanted the *Blessing*/*Wilder* test, if not in toto than at least with respect to the first factor, thereby tightening the standard by which private-right-of-action claims must be evaluated.  *See Gonzaga*, 536 U.S. at 282-83 (expressly rejecting *Blessing*/*Wilder's* benefits/interests test and instead requiring "[nothing] short of an unambiguously conferred right").  *See also Kauffman*, 981 F.3d at 359; *Reeves*, 981 F.3d at 445 n.10 (Jones, J., dissenting).

Where the text and structure of a federal statute demonstrated that its purpose was to condition a benefit to *one* party on actions that may have indirectly benefitted *another* party, the statute did <u>not</u> create a federal right enforceable by the *latter* party under § 1983.  *See Banks v. Dallas Housing Auth.*, 271 F.3d 605 (5th Cir. 2001).  In *Banks*, a pre-*Gonzaga* case, a federal statute authorized the Department of Housing and Urban Development to make rent assistance payments to owners of public housing on the condition that the owners agreed "to upgrade housing so as to make and keep such housing *decent*, *safe*, *and sanitary* . . . ."  *Id.* at 606 (italics in original). When the housing owners failed to comply with the rent assistance statute, the affected tenants

brought a § 1983 action against the housing owners, seeking redress for the owners' violation of the statute. *Id.* at 606-07. The trial court entered judgment for the housing owners, finding that there was no private right of action under § 1983 or the statute. *Id.* at 608.

On appeal, the Fifth Circuit confronted the issue of whether a private right of action existed by virtue of either § 1983 or the rent assistance statute itself. *Id.* The Court first analyzed the statute under § 1983. *Id.* Applying the then-governing three-part *Blessing/Wilder* test, the Court reasoned that while the rent assistance statute benefitted the tenants in "an indirect and attenuated manner," the purpose of the statute was in fact "to impose a condition" on the owners' receipt of government funds. *Id.* at 609. The statute did "nothing more than explain what property owners must do in order to receive public subsidies." *Id.* at 609-10. The Court cited *Alexander*, *supra*, for the proposition that "[s]tatutes that focus on the person regulated rather than the individuals protected create 'no implication of an intention to confer rights on a particular class of persons.'" *Id.* at 610. Accordingly, the Court concluded that Congress enacted the rent assistance statute for the purpose of placing conditions on the property owners' receipt of government payments—<u>not</u> for the purpose of conferring a benefit on the individual tenants of public housing. *Id.* Therefore, the plaintiffs failed to establish the first factor of the *Blessing/Wilder* test. *See id.* at 610. By extension, given the comparatively narrower standard thereafter imposed by *Gonzaga*, the plaintiffs would likewise be deemed to have failed in establishing that the statute unambiguously conferred upon them any federal *right*.

In considering the second *Blessing/Wilder* factor, the Fifth Circuit in *Banks* concluded that the plaintiffs' asserted statutory right to "decent, safe, and sanitary" housing was too imprecise to be judicially enforceable, further suggesting that Congress did not intend to create a private right of action to enforce the rent assistance statute via § 1983. *See id.* As to the third *Blessing/Wilder*

factor, the Fifth Circuit concluded that the obligation was "binding only in the sense that proper maintenance of the rental units is a condition that Congress placed upon the receipt of . . . rent assistance." *Id.* For all these reasons, the Court held that the statute in question did <u>not</u> create a federal right enforceable under § 1983. *See id.* at 610-11.

Having found no federal right enforceable via § 1983, the Fifth Circuit in *Banks* separately analyzed the statute to determine whether a private right was implied by the statute itself. *See id.* at 611. Because the statute focused on the recipient of federal funding (i.e., the housing owners) and not on the class represented by the plaintiffs (i.e., the public housing tenants), the Court held that *Alexander*, *supra*, applied to foreclose any argument that Congress intended to create an "implied" private right of action. *See id.* The Fifth Circuit accordingly affirmed the trial court's entry of judgment for the housing owners. *See id.*

In the case at bar, the Readmission Act does not create a private right of action enforceable via § 1983 or the statute itself because (1) the purpose of the statute was to impose conditions on the State of Mississippi for readmission to Congress, not to confer any new individual rights; (2) the statute is too imprecise to be judicially enforceable; (3) the statute's provisions are binding only in the sense that they serve as conditions for Mississippi's readmission to Congress; and (4) with respect to any purported "implied" private right of action not predicated upon § 1983, the statute provides no private remedy. Thus, "the plaintiffs' case is doomed . . . because they are not empowered to enforce the Readmission Act." *Reeves*, 981 F.3d at 446 (Jones, J., dissenting).

### A. The purpose of the Readmission Act was to impose conditions on the State of Mississippi for readmission to Congress, not to confer any new individual rights.

Enacted by Congress on February 23, 1870, the Readmission Act states the following, in pertinent part:

CHAP. XIX – ___An Act to admit the State of Mississippi to Representation in the Congress of the United States.___

Whereas the people of Mississippi have framed and adopted a constitution of State government which is republican; and whereas the legislature of Mississippi elected under said constitution has ratified the fourteenth and fifteenth amendments to the Constitution of the United States; and whereas **the performance of these several acts in good faith is a condition precedent to the representation of the State in Congress**:  therefore,

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled*, **That the said State of Mississippi is entitled to representation in the Congress of the United States:** *Provided*, **That** . . . .

. . . .

___And provided further___**, That the State of Mississippi is admitted to representation in Congress as one of the States of the Union, upon the following fundamental conditions**:

. . . .

Third, That the constitution of Mississippi shall never be so amended or changed as to deprive any citizen or class of citizens of the United States of the school rights and privileges secured by the constitution of said State.

16 Stat. 67 (1870) (italics and small caps in original; boldface underscore added).

Beginning with its very title, the Readmission Act expressly articulates as its sole purpose the "admi[ssion] [of] the State of Mississippi to Representation in the Congress of the United States."  *Id.*  That singular purpose is perpetuated throughout the body of the statute.  *See id.*  Indeed, the statutory text consists entirely of a list of conditions imposed by Congress upon the State of Mississippi for readmission of its representatives to Congress.  The Act contains no "explicit rights-creating terms," nor is it "phrased in terms of" any identifiable class of persons purportedly benefitted by the statute.[8]  *See Gonzaga*, 536 U.S. at 284.  Rather, the exclusive focus

---

[8] To the extent Plaintiffs would argue that the Readmission Act's reference to "school rights and privileges" should somehow be read to constitute "rights-creating terms," that argument is undermined by the Supreme Court's holding in *Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1, 18 (1981) (holding that "the fact that [a statute] speaks in terms of 'rights'" does not alone create private right of action, since court

of the Act is on the State of Mississippi and the conditions imposed for readmission of its

representatives to Congress.  As Judge Jones recognized in her dissent (joined by seven other Fifth

Circuit judges) in this matter previously,

> . . . [t]he readmission acts simply offered the states a choice to comply with certain
> congressional conditions or run the risk that their representatives will not be seated.
> That much is obvious from the text and structure of the Readmission Act.  It was
> passed "to admit the State of Mississippi to Representation in the Congress of the
> United States" upon certain conditions.  [Citation omitted.]  The Act explicitly
> describes "the performance of these several acts" as a "condition precedent to the
> representation of the State in Congress."  [Citation omitted.]  Later in the Act, it
> explicitly qualifies Mississippi's admittance "to representation in Congress" upon
> three "fundamental conditions," one of which is the school rights and privileges
> condition at issue here.

*Reeves*, 981 F.3d at 444 (Jones, J., dissenting).  Reading the Act as a whole and considering "its

object and policy" as a rubric for Mississippi's readmission to Congress, it cannot fairly be said

that the Act unambiguously confers any rights upon anyone.  *See Halderman*, 451 U.S. at 18.

Certainly, the Act lacks any "explicit" statement of Congress' intent to create a private right of

action.  *See Ziglar*, 137 S. Ct. at 1856.

    With respect to § 1983, Congress could not *possibly* have intended for the Act to be

enforceable under that statute "for the obvious reason that the Readmission Act was enacted before

Congress adopted § 1983 as part of the Civil Rights Act.  *See* Civil Rights Act of 1871, ch. 22, 17

Stat. 13."  *Reeves*, 981 F.3d at 445 n.9 (Jones, J., dissenting).  Moreover, as originally enacted, §

1983 only provided a remedy for the violation of rights secured by the U.S. Constitution.  *See id.*

*See also Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 608 (1979).  "It was not until

after the language was amended and the Supreme Court clarified its scope in the mid-to-late 1900s

---

"must not be guided by a single sentence or member of a sentence, but [must] look to the provisions of the
whole law, and to its object and policy").  As set forth *infra*, reading the Readmission Act as a whole, and
considering its object and policy, there is no basis to conclude that Congress intended to confer any private
right of action.

that federal statutes could confer rights enforceable by § 1983." *Reeves*, 981 F.3d at 445, n.9 (Jones, J., dissenting). *See also Maine v. Thiboutot*, 448 U.S. 1, 4 (1980). Accordingly, any claim that Congress intended for the Act to be enforceable via § 1983 is facially invalid.

As was the case with the rent assistance statute in *Banks*, *supra*, the purpose of the Readmission Act was "to impose a condition" on the State of Mississippi's readmission to Congress. *See Banks*, 271 F.3d at 609. The Act was enacted for that purpose alone, **not** for the purpose of conferring any benefit—must less any ***right***, as required by *Gonzaga*—on Plaintiffs or anyone else. Like the rent assistance statute in *Banks*, *supra*, the Act did "nothing more than explain what [the State of Mississippi] must do in order to [be readmitted to Congress]." *See id.* Accordingly, the Act does not unambiguously confer any new individual federal rights. For this reason standing alone, there can be no private right of action pursuant to *Gonzaga*, and Plaintiffs' First Amended Complaint should be dismissed.

**B.   The terms of the Readmission Act are too imprecise to be judicially enforceable.**

To the extent the *Blessing/Wilder* factors still apply at all in the wake of *Gonzaga*, the result is the same. As Judge Jones recognized in her dissent in this matter previously,

> . . . the concept of "school rights and privileges" is outside of judicial competence and far beyond what a federal court should be telling states to do. The Readmission Act, for its part, does not provide any guidance on the term "school rights and privileges" or provide objective benchmarks for evaluating such rights. Making such determinations on its own is well beyond the provenance of the federal judiciary.

*Reeves*, 981 F.3d at 445 (Jones, J., dissenting). The Supreme Court has likewise admonished courts to exercise judicial restraint in matters implicating educational policy, articulating this concern in a given case as follows:

> In addition to matters of fiscal policy, this case also involves the most persistent and difficult questions of educational policy, another area in which this Court's lack of specialized knowledge and experience counsels against premature interference

> with the informed judgments made at the state and local levels.  Education, perhaps
> even more than welfare assistance, presents a myriad of "intractable economic,
> social, and even philosophical problems."

*Rodriguez*, 411 U.S. at 42.

Like the terms "decent, safe, and sanitary" found unworkably imprecise by the Fifth Circuit

in *Banks*, *supra*, the term "school rights and privileges"—which is nowhere defined or explained

in the Readmission Act—is too vague and amorphous to be judicially enforceable.  Any effort to

divine workable standards from such generalized terms would place a "strain on judicial

competence" that further militates against any congressional intent to create a private right of

action.  *See Reeves*, 981 F.3d at 446 (Jones, J., dissenting).  Accordingly, to the extent the

*Blessing*/*Wilder* test retains any force post-*Gonzaga*, the second factor likewise undermines the

existence of any private right of action.

**C.  The provisions of the Readmission Act are binding only in the sense that they serve
as conditions for Mississippi's readmission to Congress.**

To the extent the *Blessing*/*Wilder* test remains applicable at all following *Gonzaga*, its third

and final factor likewise counsels against the existence of a private right of action.  As Judge Jones

recognized in her dissent in this matter previously,

> . . . the statute's language is not "mandatory" toward any goal and thus fails the
> third *Blessing* factor.  The Act places conditions on Mississippi that are enforced
> through congressional action, but in no way does it contemplate granting plaintiffs
> a right enforceable against the state.

*Id.*  Like the rent assistance statute in *Banks*, *supra*, the Readmission Act is "binding only in the

sense that [the provisions set out therein are] condition[s] that Congress placed upon" the

readmission of Mississippi's representatives to Congress.  *See Banks*, 271 F.3d at 610.  While a

failure of the State to perform the Act's conditions might conceivably result in some measure of

enforcement by Congress, the conditions are not otherwise mandated on penalty of private

enforcement.  Accordingly, to the extent the *Blessing*/*Wilder* test retains any force post-*Gonzaga*, its third and final factor undermines the existence of any private right of action.

**D.**  **With respect to any "implied" private right of action not predicated upon § 1983, the Readmission Act provides no private remedy.**

As set forth *supra*, where a plaintiff asserts an "implied" right of action claim predicated on the statute itself as opposed to § 1983, he has the additional burden of showing that the statute "manifests an intent 'to create not just a private *right* **but also a private *remedy*.**'"  *Gonzaga*, 536 U.S. at 284 (quoting *Alexander*, 532 U.S. at 286) (italics in original; boldface underscore added). The Readmission Act does not provide any private remedy whatsoever.  As noted *supra*, Congress could not *possibly* have intended for § 1983 to apply as an enforcement mechanism since the Act was enacted before Congress adopted § 1983 as part of the Civil Rights Act, and long before § 1983 was deemed applicable to federal statutes.  To the extent Plaintiffs would assert that the statute itself creates an "implied" private right of action, that argument is foreclosed by the glaring absence of any private remedy in the text of the Act.

The text and structure of the Readmission Act provide no indication that Congress thereby intended to create new individual, federal rights.  Pursuant to both the governing *Gonzaga* standard and its predecessor test espoused in *Blessing* and *Wilder*, the Act simply does not create a private right of action.  Plaintiffs cannot show otherwise.  If for some reason this Court does not dismiss Plaintiffs' First Amended Complaint on jurisdictional grounds, the Court should dismiss this action with prejudice pursuant to FRCP 12(b)(6) given the lack of any private right of action.

## CONCLUSION

Plaintiffs would have this Court turn back the clock 151 years to hold Mississippi in violation of a Reconstruction statute that, at best, contemplates perpetuating a public school system on par with what the State was capable of providing in 1870—a mere five years removed from the

Civil War in which Mississippi saw an invading Federal army make war on her civilian population, ravage her countryside, pillage her resources, and thrice put her capital city to the torch.  Setting aside the sheer absurdity of Plaintiffs' legal theory, it is beyond dispute that there is, and will likely always be, room for improvement in Mississippi's public school system.  However, Plaintiffs' lawsuit is not the vehicle through which such improvement can or should be fostered.

Plaintiffs have no justiciable dispute, no standing, and no private right of action.  For any and all of these reasons, the State of Mississippi should not continue to be subjected to this baseless litigation, and Plaintiffs' First Amended Complaint should be dismissed.

THIS the 14th day of September, 2021.

Respectfully submitted,

GOVERNOR TATE REEVES, ET AL.,
DEFENDANTS

By:   LYNN FITCH, ATTORNEY GENERAL
       STATE OF MISSISSIPPI

By:   s/Rex M. Shannon III
       REX M. SHANNON III (MSB #102974)
       Special Assistant Attorney General

OFFICE OF THE ATTORNEY GENERAL
CIVIL LITIGATION DIVISION
Post Office Box 220
Jackson, Mississippi  39205-0220
Tel.:  (601) 359-4184
Fax:  (601) 359-2003
rex.shannon@ago.ms.gov

ATTORNEYS FOR GOVERNOR TATE REEVES, ET AL., DEFENDANTS

## CERTIFICATE OF SERVICE

I, Rex M. Shannon III, Special Assistant Attorney General and one of the attorneys for Defendants Governor Tate Reeves, et al., do hereby certify that I have this date caused to be filed with the Clerk of the Court a true and correct copy of the above and foregoing via the Court's ECF System, which sent notification of such filing to all counsel of record.

THIS the 14th day of September, 2021.

s/Rex M. Shannon III
REX M. SHANNON III