**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION**

**DOROTHY HAYMER, on behalf of her minor child D.S., et al.**          **PLAINTIFFS**

**VS.**                                    **Civil Action No. 3:17-cv-00404-HTW-LGI**

**TATE REEVES, in his official capacity as
Governor of Mississippi, et al.**                             **DEFENDANTS**

---

**REBUTTAL IN FURTHER SUPPORT OF DEFENDANTS'
MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT**

---

## INTRODUCTION

The Court should dismiss Plaintiffs' First Amended Complaint because (1) Plaintiffs have failed to overcome the political question doctrine and thus have no justiciable claim; (2) Plaintiffs have failed to establish standing; and (3) Plaintiffs have failed to establish any right to privately enforce the Readmission Act ("the Act"). In the absence of a justiciable dispute and/or standing, this Court lacks subject matter jurisdiction. Even if the Court were to find for some reason that jurisdiction exists, in the absence of a private right of action, Plaintiffs have failed to state a claim.

## ARGUMENT

### I. PLAINTIFFS FAIL TO OVERCOME THE POLITICAL QUESTION DOCTRINE AND THUS HAVE NO JUSTICIABLE CLAIM.

In response to Defendants' showing of nonjusticiability, Plaintiffs argue that (1) the political question doctrine does not apply in "statutory cases"; and (2) all six *Baker v. Carr*[1] factors render this case justiciable. *See* Dkt. #72 at 6-15. Neither of these arguments withstands scrutiny in light of the facts pled and the applicable case law.

---

[1] *Baker v. Carr*, 369 U.S. 186 (1962).

**A. Labeling this action a "statutory case" does not save Plaintiffs from the bar of the political question doctrine.**

This Court should reject Plaintiffs' effort to characterize their claims as falling within some "statutory case" exception to the political question doctrine. First of all, the political question doctrine does not turn on labels. In resolving any question of justiciability premised on the political question doctrine, "[t]he issue is **not** how Plaintiff[s] ha[ve] styled [their] suit, but instead **what the underlying controversy is**." *In re Nazi Era Cases Against German Defendants Litig.*, 129 F. Supp. 2d 370, 375 (D.N.J. 2001) (emphasis added). *See also El-Shifa Pharm. Indus. Co. v. United States*, 607 F.3d 836, 842 (D.C. Cir. 2010) (reaffirming that political question doctrine, where applicable, bars court's review of claims "regardless of how they are styled"). The "underlying controversy" in this case is whether the State of Mississippi has violated a condition of its readmission to Congress following the War Between the States. Notwithstanding Plaintiffs' attempt to brand this action a "statutory case," the critical question for purposes of evaluating justiciability is whether resolution of this issue is committed to a coordinate branch of government—namely, the United States Congress. If, as it must be, the answer is 'yes,' then Plaintiffs have no justiciable dispute, and this Court lacks subject matter jurisdiction.

Secondly, even if this Court were to find that labels matter, there is no bright-line rule rendering "statutory cases" justiciable per se. In support of their assertion that "the political question doctrine does not apply in statutory cases," see Dkt. #72 at 6, Plaintiffs cite *El-Shifa Pharm. Indus. Co.*, *supra*, and *Zivotofsky ex rel. Zivotofsky v. Clinton*, 566 U.S. 189 (2012). Neither of these cases articulates or implies that so-called "statutory cases" are categorically excepted from the reach of the political question doctrine.

With regard to *El-Shifa*, Plaintiffs cite then-Judge Kavanaugh's concurring opinion for his statement that "[t]he Supreme Court has never applied the political question doctrine in a case

2

involving alleged *statutory* violations." *El-Shifa*, 607 F.3d at 856 (Kavanaugh, J., concurring) (emphasis in original).  However, *El-Shifa's* majority reasoned that "contrary to the position adopted by Judge Kavanaugh—a statute providing for judicial review does not override Article III's requirement that federal courts refrain from deciding political questions," and that "[n]either a common law **nor statutory claim** may require the court" to wade into matters that "the Constitution entrusts to the political branches alone." *See id.* at 843 (emphasis added).  Thus, *El-Shifa* lends no support to Plaintiffs' argument.

Plaintiffs' reliance on *Zivotofsky* is likewise misplaced.  *Zivotofsky* involved the "narrow question," *Zivotofsky*, 566 U.S. at 210 (Alito, J., concurring), of the constitutionality of a federal statute; it did **not** entail any lack "of judicially discoverable and manageable standards," nor did it involve a situation in which federal courts would be compelled to "supplant a . . . policy decision" of Congress "with the courts' own unmoored determination of . . . policy." *See Zivotofsky*, 566 U.S. at 196-97.  As set forth in detail at pages 11-14 of Defendants' Memorandum (Dkt. #67), unlike *Zivotofsky*, **both** of these considerations are operative in the case at bar.

No fair reading of *Zivotofsky* yields any "obvious implication," see Dkt. #72 at 8, that the political question doctrine can never apply in a "statutory case."  That is a stretch that is simply not supported by the Supreme Court's reasoning in that case.  *See Zivotofsky*, 566 U.S. at 208 (Sotomayor, J., concurring) (commenting that it cannot be said "that no statute could give rise to a political question," and further that "[i]t is not impossible to imagine a case involving the application or even the constitutionality of an enactment that would present a nonjusticiable issue").  *See also Al-Tamimi v. Adelson*, 916 F.3d 1, 12 n.6 (D.C. Cir. 2019) (recognizing that political question doctrine can apply to render "statutory claim" nonjusticiable where claim requires court to make policy choice and/or statutory language does not include judicially

3

manageable standards).  Accordingly, *Zivotofsky* avails Plaintiffs nothing, and the Court should reject any notion that this case is excepted from the reach of the political question doctrine.

**B.   Plaintiffs' analysis of the *Baker* factors ignores the obvious purpose, intent, and historical context of the Readmission Act.**

Plaintiffs go to great lengths to portray this as a "simple case," Dkt. #72 at 1—a garden variety § 1983 action that "happens all the time," *id.* at 9.[2]  Plaintiffs ignore the inescapable truth that—as its moniker implies—the "Readmission Act" is just that:  an act to readmit Mississippi's representatives to Congress following the Civil War.  Despite Plaintiffs' attempt to couch the *Baker* factors in terms of a run-of-the-mill case of statutory interpretation, this Court's analysis of the *Baker* factors cannot be divorced from the purpose, intent, and historical context of the Act.

As to the first *Baker* factor, Plaintiffs assert that the question to be answered "is whether *the Constitution* commits the issue to a political branch."  *Id.* at 10 (emphasis in original).  The issue at hand, *viz.*, whether the State of Mississippi has violated a condition of its readmission to Congress, **is** in fact constitutionally committed solely to Congress—**not** to the federal judiciary.

To the extent Congress, in which former Confederate States had no representation at the time, had authority to impose conditions of readmission on such States, that authority was grounded in Article IV, Section 4, of the U.S. Constitution ("the Guarantee Clause") guaranteeing a "Republican Form of Government," see U.S. CONST., art. IV, § 4.[3]  It is well settled that "whether a republican form of government has been guaranteed to any particular state is a matter for

---

[2] In reality, Reconstruction-era readmission act cases are something of a legal unicorn, and Plaintiffs have in fact characterized Defendants' instant motion to dismiss as "pos[ing] complex questions of constitutional law."  Dkt. #70 at 1.

[3] *See Texas v. White*, 74 U.S. 700, 729 (1868).  *See also State v. Williams*, 49 Miss. 640, 662 (Miss. 1873); 16 Stat. 67 (1870) ("WHEREAS the people of Mississippi have framed and adopted a constitution of State government which is republican . . . .").

**Congress only** to decide." *Susman v. Bd. of Pub. Educ. of City of Pittsburgh*, 228 F. 217, 219 (W.D. Pa. 1915) (citing *Luther v. Borden*, 48 U.S. 1 (1849)) (emphasis added). In the words of Justice Cardozo, "**the enforcement of that guarantee**, according to the settled doctrine, **is for Congress, not the courts.**" *Highland Farms Dairy v. Agnew*, 300 U.S. 608, 612 (1937) (emphasis added). *See also State of Ohio ex rel. Bryant v. Akron Metro. Park Dist. for Summit County*, 281 U.S. 74, 79 (1930) (reaffirming that "it is well settled that the questions arising under [the Guarantee Clause] are political, not judicial, in character, and thus **are for the consideration of the Congress and not the courts**") (emphasis added).[4] *See also* Dkt. #67 at 10-11. Accordingly, it is beyond debate that the first *Baker* factor renders this case nonjusticiable.[5]

As to the second *Baker* factor, Plaintiffs fail to identify any judicially discoverable and manageable standards governing "Readmission Act litigation." They fail to answer any of the questions posed at page 12 of Defendants' Memorandum. Nowhere in their response do they explain how—in the absence of any extant judicial standards—this Court is to somehow determine any of the three enumerated matters set forth at page 12 of Defendants' Memorandum.[6] Instead,

---

[4] *Cf. Pac. States Tel. & Tel. Co. v. Oregon*, 223 U.S. 118, 139-51 (1912) (holding that claim that provision of Oregon constitution violated provisions of act of Congress admitting Oregon to Union was a claim asserting violation of Guarantee Clause). *See also Perschall v. Louisiana*, 174 F.3d 197, *3 n.4 (5th Cir. 1999) (reaffirming that claim asserting violation of Guarantee Clause "is a political question and therefore nonjusticiable"); *Cochran v. La. State Bd. of Educ.*, 281 U.S. 370, 374 (1930) (same).

[5] The Court should reject Plaintiffs' attempt to brush aside *Butler v. Thompson*, 97 F. Supp. 17 (E.D. Va. 1951), and *Merritt v. Jones*, 533 S.W.2d 497 (Ark. 1976), discussed in Defendants' Memorandum (Dkt. #67). The courts in both cases predicated their analysis of justiciability on considerations not inconsistent with *Baker*, namely the recognition that this matter is one "peculiarly within the domain of Congress itself." *Butler*, 97 F. Supp. at 20. While Plaintiffs deride *Butler* for its connection to the era of segregation, see Dkt. #72 at 10, the federal court's legal reasoning on the point at issue is nevertheless sound.

[6] Significantly, in 1868, a "uniform system of free public schools," MISS. CONST. of 1868, art. VIII, § 1, was guaranteed for only "four months in each year," *id.* at § 5. There are no judicially discoverable or manageable standards for comparing the "school rights and privileges secured by [that] constitution," 16 Stat. 67 (1870), for four months out of the year—on the heels of the Civil War—with the rights and privileges provided today, whereby Mississippi students enjoy nine months of free public education.

Plaintiffs merely dismiss as "misplaced," Dkt. #72 at 12, the concerns expressed by eight Fifth Circuit judges that the absence of any articulated standards in the Act places this matter "well beyond the provenance of the federal judiciary." *Williams on behalf of J.E. v. Reeves*, 981 F.3d 437, 445 (5th Cir. 2020) (Jones, J., dissenting).  For the reasons set forth in Defendants' Memorandum, the second *Baker* factor likewise renders this action nonjusticiable.

As to the third *Baker* factor, Plaintiffs assert—erroneously—that "[t]his case calls for no judicial policy determination."  Dkt. #72 at 12.  Plaintiffs fail to address the exceptional nature of the legislation in question, the historical context that informed its enactment, and the absence of congressional enforcement in the intervening century and half.  Whether the Act any longer has or should have any force or effect **at all** given Mississippi's continued admission to representation in Congress in every year since readmission is a policy determination that only Congress can make. *See Merritt v. Jones*, 533 S.W.2d 497, 502 (Ark. 1976).  For the reasons set forth in Defendants' Memorandum, the third *Baker* factor also renders this action nonjusticiable.

Whether the State of Mississippi has violated the Act—which Defendants deny—is an issue committed to the exclusive domain of Congress.  Plaintiffs have presented no authority providing otherwise.  To find a political question, this Court need only find that one *Baker* factor is present.  *Schneider v. Kissinger*, 412 F.3d 190, 194 (D.C. Cir. 2005).  Here, at least three of the *Baker* factors (including the first two, deemed most significant, see *Zivotofsky*, 566 U.S. at 195) render this case nonjusticiable.  For all these reasons, this Court lacks subject matter jurisdiction.

## II.  PLAINTIFFS FAIL TO ESTABLISH STANDING.

### A.  **Because any interests Plaintiffs may have in connection with the Readmission Act are abstract and widely shared, Plaintiffs have not alleged a cognizable injury in fact.**

Plaintiffs argue that they have alleged injuries that are sufficiently "concrete and particularized" to avoid dismissal of this action on standing grounds as advancing a generalized

grievance.  Dkt. #72 at 16-17.  In support of this argument, Plaintiffs cite *C.M. ex rel. Marshall v.*
*Bentley*, 13 F. Supp. 3d 1188 (M.D. Ala. 2014).  *Id.* at 16.  In *Bentley*, the district court held that
the plaintiffs did <u>not</u> have standing to assert an equal protection claim for diversion of public
education funds where their "alleged funding injury [was] unmoored from allegations of unequal
or disparate treatment" on which that claim was predicated.  *Bentley*, 13 F. Supp. 3d at 1202.

In the case at bar, Plaintiffs allege the following "concrete" injuries:  "a diminished ability
to exercise the right to vote meaningfully; illiteracy; economic injuries, such as diminished lifetime
earnings potential and increased likelihood of poverty; and non-economic injuries, such as
diminished likelihood of attending and/or graduating college."  Dkt. #72 at 16.  It strains credulity
to suggest that any of these alleged "concrete" injuries may plausibly be connected to Mississippi's
alleged failure to comply with the conditions of its readmission to Congress following the Civil
War.  Accordingly, consistent with *Bentley*, Plaintiffs cannot establish standing on this basis.

That leaves the Court to consider the generalized grievance that Plaintiffs' children, by
virtue of being enrolled in predominantly African-American schools, are receiving "a disuniform
and inferior education."  *Id.*  As the Supreme Court acknowledged in *Fed. Election Comm'n v.*
*Akins*, 524 U.S. 11, 23-25 (1998), cited by Plaintiffs, such "abstract and . . . widely shared" interests
are insufficient to support the requisite injury in fact to confer standing.  Because any interests
Plaintiffs may have in connection with the Act are both abstract and widely shared, Plaintiffs have
not alleged a judicially cognizable injury in fact.

**B.**  **Plaintiffs fail to supply any plausible alleged factual predicate tracing any alleged**
**injury to the removal of a "uniform[ity]" provision from Section 201 of the Mississippi**
**Constitution.**

Plaintiffs argue that to meet the requirement of traceability, they must show only that
Defendants' alleged conduct contributed to their alleged injury.  Dkt. #72 at 19.  However,

Plaintiffs fail to make that showing in their First Amended Complaint.  Plaintiffs assert that a host of alleged injuries suffered by African-American students generally in Mississippi is traceable to the removal, in 1960, of the words "a uniform system" preceding the phrase "of free public schools" in Section 201 of the Mississippi Constitution.  While this conclusory allegation is the linchpin on which Plaintiffs' lawsuit turns, nowhere in their First Amended Complaint do Plaintiffs present any plausible facts explaining *how* such expansive alleged harm is fairly traceable to the omission—over 60 years ago—of three words from a State constitutional provision.[7]

Plaintiffs' Memorandum Response is equally devoid of any such explanation.  Instead, Plaintiffs merely state—without elaboration and in conclusory fashion—that "if the Defendants provided a uniform system of public schools, the Parents' children would not be set at a lifelong competitive disadvantage relative to students in predominantly white schools." *Id.*  Having failed to point to any plausible set of factual allegations fairly tracing Plaintiffs' alleged injuries to a 1960 revision of a State constitutional provision, Plaintiffs have not alleged a traceable injury.

C.  **Plaintiffs fail to show how any declaratory judgment issued in this case would redress their alleged injuries.**

In a telling effort to sidestep their redressability problem, Plaintiffs mischaracterize Defendants' reasoned arguments on this point as constituting some sort of "threat" to "violate[] federal court orders."  Dkt. #72 at 20.  What Plaintiffs choose to ignore is the open-ended complexity of the declaratory judgment they seek from this Court and the practical ramifications that undermine redressability in this context.

---

[7] In *Campaign for S. Equality v. Miss. Dep't of Human Servs.*, 175 F. Supp. 3d 691 (S.D. Miss. 2016), cited by Plaintiffs, the Court acknowledged that even though an "indirect causal relationship will suffice" in this context, there must nevertheless be "a <u>fairly traceable connection</u> between the alleged injury in fact and the alleged conduct of the defendant."  *Campaign for S. Equality*, 175 F. Supp. 3d at 707 (internal quotation marks omitted) (emphasis added).

Plaintiffs are not asking this Court to declare that some discrete action within Defendants' control is unconstitutional or otherwise illegal and must cease. Nor are they asking the Court to declare that Defendants are required to take some concrete affirmative action that is within their power to effectuate. Rather, Plaintiffs—by their own admission, see *id.* at 21—seek to have this Court invalidate multiple amendments to the education clause of Mississippi's Constitution, presumably to reinstate the version of the clause that existed in 1870. As a practical and legal matter, that action alone will not and cannot effect any redress of Plaintiffs' alleged injuries.

As set forth in detail at pages 17-19 of Defendants' Memorandum, even assuming for the sake of argument that Plaintiffs were to succeed in overturning *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89 (1984), and were ultimately able to obtain an injunction requiring Defendants to comply with state law as it existed over 150 years ago, such an injunction would not redress the type of systemic racial inequalities that Plaintiffs allege presently exist in Mississippi's public school system. Defendants have no power to effectuate the relief Plaintiffs seek.[8] Rather, such power rests exclusively with the Mississippi Legislature and the State's registered voters. Defendants cannot compel individual Legislators to vote a given way on any given issue. Nor can Defendants control the decisions of the multiplicity of county and municipal school boards scattered throughout Mississippi's 82 counties.

Plaintiffs dismiss these considerations outright. They assert that *how* the State would choose to comply with any declaratory judgment is its own problem and is "irrelevant to the

---

[8] This fact alone vitiates standing. *See Okpalobi v. Foster*, 244 F.3d 405, 426-27 (5th Cir. 2001) (holding that where defendant has "no powers to redress the injuries alleged, the plaintiffs have no case or controversy with the[] defendants that will permit them to maintain [an] action in federal court," and federal court lacks subject matter jurisdiction). *See also McCreary v. Richardson*, 738 F.3d 651, 655 (5th Cir. 2013) (reaffirming *Okpalobi's* holding that plaintiffs lack standing where defendants lack authority to redress plaintiffs' alleged injuries).

question of standing."  Dkt. #72 at 21.  But that is simply not the case under *Okpalobi v. Foster*, 244 F.3d 405 (5th Cir. 2001) and its progeny.[9]  The question of redressability cannot be decoupled from the practical realities of implementation.  Plaintiffs offer no explanation for how any declaratory judgment issued in this case would serve to redress their alleged injuries.  If—as Plaintiffs allege and Defendants deny—there is any disparity along racial lines in the quality of public education in this state due to Mississippi's alleged violation of the Act, it is not at all evident that it is within the power of Defendants or this Court to rectify.  Plaintiffs have not shown otherwise.  For all these reasons, Plaintiffs lack standing.

## III.  PLAINTIFFS FAIL TO ESTABLISH ANY RIGHT TO PRIVATELY ENFORCE THE READMISSION ACT.

Plaintiffs concede that the Act "creates no *implied* right of action."  *See* Dkt. #72 at 25 (emphasis in original).  Rather, they seek to privately enforce the Act via 42 U.S.C. § 1983.  *Id.* at 21.  Regardless, the threshold inquiry is the same, *viz.*, does the Act unambiguously confer new, individual federal rights—not merely benefits—on a particular class of persons?  *Gonzaga Univ. v. Doe*, 536 U.S. 273, 283-85 (2002).  As set forth in detail at pages 20-29 of Defendants' Memorandum, the answer to that question is and must be a resounding 'no.'  In a vain attempt to show otherwise, Plaintiffs ignore both controlling case law and the text of the Act itself.

Plaintiffs would have this Court overlook the incontrovertible fact—confirmed by any fair reading of the Act as a whole—that its sole object was to impose conditions on the State of Mississippi for the readmission of its representatives to Congress.[10]  Instead, Plaintiffs point to a

---

[9] *See supra*, note 8.

[10] Plaintiffs admonish against "turning a blind eye to statutory text that a litigant finds inconvenient."  Dkt. #72 at 25.  Yet that is precisely what Plaintiffs have done in choosing to disregard the plethora of textual references, set forth at page 25 of Defendants' Memorandum (Dkt. #67), confirming the singular purpose and intent of the Readmission Act.

single phrase, excerpted from one of several enumerated conditions, as purportedly indicative of a congressional intent to confer upon them new federal "rights."  Dkt. #72 at 22.  Such piecemeal consideration of statutory language cannot form the basis for a private right of action as a matter of law.  *See Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1, 18 (1981).  Rather, in examining the intent of a given statute, courts "must **not** be guided by a single sentence or member of a sentence, but [must] look **to the provisions of the whole law, and to its object and policy**."  *Id.* (emphasis added).  Plaintiffs' faulty analysis is misguided.  Read as a whole and in light of its purpose, the Act evinces no congressional intent to confer any new, individual federal rights and thus cannot be privately enforced via § 1983.[11]

Plaintiffs further assert that Congress intended to create a private right of action "by using the word 'right' in the [Act]," presumably in the phrase "school rights and privileges."  Dkt. #72 at 23.  Plaintiffs' argument fails in light of *Pennhurst*, *supra*, in which the Supreme Court held that "the fact that [a statute] speaks in terms of 'rights'" does not alone create a private right of action since, as noted *supra*, the court must consider the statutory text as a whole.  *See Pennhurst*, 451 U.S. at 18.  Accordingly, the appearance of the phrase "school rights and privileges"—which, incidentally, is nowhere defined in the Act—cannot suffice to create a private right of action under any wholistic reading of the statute.[12]

---

[11] Eight judges of the Fifth Circuit have already recognized as much.  *See Williams on behalf of J.E. v. Reeves*, 981 F.3d 437, 445-46 (5th Cir. 2020) (Jones, J., dissenting) (noting that "[t]here is nothing in the text, structure, or history of the Readmission Act that suggests any congressional intent to create a private right of action—much less an unambiguous one," and accordingly "the plaintiffs' case is doomed . . . because they are not empowered to enforce the Readmission Act" under § 1983 or otherwise).

[12] Plaintiffs' attempt to distinguish *Planned Parenthood of Greater Tex. Family Planning & Preventative Health Servs., Inc. v. Kauffman*, 981 F.3d 347 (5th Cir. 2020), is equally unavailing.  *Kauffman* reaffirmed the governing precepts articulated in *Gonzaga*.  *Kauffman*, 981 F.3d at 353-54.  Like the statute at issue in *Kauffman*, the Readmission Act does not "unambiguously confer[]," *id.* at 360, any "right" upon Plaintiffs.

Finally, Plaintiffs again assert that this is "a simple case" for which the Act provides sufficiently precise standards to permit private enforcement. *See* Dkt. #72 at 24. However, no such standards are identified in Plaintiffs' response because, in fact, they are nowhere articulated in the Act, see *Reeves*, 981 F.3d at 445 (Jones, J., dissenting)—further evidence that Congress did not intend to authorize private enforcement.

Glaringly absent from Plaintiffs' response is any mention whatsoever of *Banks v. Dallas Housing Auth.*, 271 F.3d 605 (5th Cir. 2001), discussed in detail in Defendants' Memorandum. Given *Gonzaga's* subsequent tightening of the governing standard, see Dkt. #67 at 22-23, the Fifth Circuit's analysis in *Banks* confirms that the Act is not and cannot be privately enforceable.

It is well settled that "where the text and structure of a statute provide no indication that Congress intend[ed] to create new individual rights, there is no basis for a private suit, whether under § 1983 or under an implied right of action." *Gonzaga*, 536 U.S. at 286. In over 150 years, neither the Supreme Court nor the Fifth Circuit has ever recognized a private right of action under Mississippi's Readmission Act or any comparable legislation applied to other former Confederate States—either standing alone or via § 1983. Plaintiffs have presented no legally cognizable basis for this Court to do so now. If for some reason this case is not otherwise dismissed on jurisdictional grounds, the Court should dismiss it with prejudice pursuant to FRCP 12(b)(6) given the lack of any private right of action.

## CONCLUSION

Plaintiffs have no justiciable dispute, no standing, and no private right of action. For the reasons set forth herein and in Defendants' Memorandum (Dkt. #67), Plaintiffs' First Amended Complaint should be dismissed for lack of subject matter jurisdiction pursuant to FRCP 12(b)(1) or, alternatively, dismissed with prejudice for failure to state a claim pursuant to FRCP 12(b)(6).

THIS the 29th day of October, 2021.

                       Respectfully submitted,

                       GOVERNOR TATE REEVES, ET AL.,
DEFENDANTS

By:    LYNN FITCH, ATTORNEY GENERAL
        STATE OF MISSISSIPPI

By:    s/Rex M. Shannon III
        REX M. SHANNON III (MSB #102974)
        Special Assistant Attorney General

STATE OF MISSISSIPPI
OFFICE OF THE ATTORNEY GENERAL
CIVIL LITIGATION DIVISION
Post Office Box 220
Jackson, Mississippi  39205-0220
Tel.:  (601) 359-4184
Fax:  (601) 359-2003
rex.shannon@ago.ms.gov

ATTORNEYS FOR GOVERNOR TATE REEVES, ET AL., DEFENDANTS

**<u>CERTIFICATE OF SERVICE</u>**

I, Rex M. Shannon III, Special Assistant Attorney General and one of the attorneys for Defendants Governor Tate Reeves, et al., do hereby certify that I have this date caused to be filed with the Clerk of the Court a true and correct copy of the above and foregoing via the Court's ECF System, which sent notification of such filing to all counsel of record.

THIS the 29th day of October, 2021.

                       s/Rex M. Shannon III
                       REX M. SHANNON III